The State of Ohio, Appellee, v. Nabozny, Appellant.

(No. 77-821—Decided May 10, 1978.)

198

Mr. *David E. Lighttiser*, prosecuting attorney, *Mr. Stephen E. Schaller* and *Mr. James W. Hostetter*, for appellee.

Messrs. *Morrow, Gordon & Byrd* and *Mr. James R. Cooper*, for appellant.

LOCHER, J. Appellant has presented for this court's consideration 26 propositions of law.

## I.

The first four propositions of law present questions concerning the constitutionality of this state's death penalty and related statutes. Appellant argues first that the statutory scheme, in violation of the due-process clauses of the Ohio and United States Constitutions, discriminates between those defendants who plead guilty or no contest to aggravated murder and those defendants who exercise their constitutional right to plead not guilty and proceed to trial. Specifically, appellant asserts that then Crim. R. 11(C)(4), now Crim. R. 11(C)(3), by allowing the trial judge, when the defendant enters a plea of guilty or no contest, to dismiss the specifications "in the interests of justice" creates an impermissible "chilling effect" upon the defendant's right to a trial and is violative of the pronouncements of *United States* v. *Jackson* (1968), 390 U. S. 570. We have

previously addressed this contention. In *State* v. *Weind* (1977), 50 Ohio St. 2d 224, this court found that the chilling effect condemned in *United States* v. *Jackson, supra,* was absent from the present Ohio scheme, noting, at page 229, that:

"In the instant cause, a defendant, even if he pleads guilty or no contest, is not assured that any or all of the specifications contained in his indictment will be dismissed, since the court *may* dismiss such specification in the 'interests of justice.' * * *"

Unlike the absolute avoidance of the death penalty by a guilty plea in *United States* v. *Jackson, supra,* the death penalty in Ohio is possible under both alternatives, and it may be avoided under both alternatives. As in *State* v. *Bell* (1976), 48 Ohio St. 2d 270, wherein this court affirmed the constitutionality of a similar decisional situation, we find nothing objectionable in providing the defendant with a choice.

Further, we discern no compelling reason to proscribe the discretion given the trial judge under Crim. R. 11(C) (3). *State* v. *Weind, supra.* In *Gregg* v. *Georgia* (1976), 428 U. S. 153, the United States Supreme Court held that the Georgia statute granting discretion to the prosecutor and jury to avoid the imposition of capital punishment upon the defendant did not violate the holding in *Furman* v. *Georgia* (1972), 408 U. S. 238. Explaining this holding, Justice Stewart stated, at page 199:

"* * * Nothing in any of our cases suggests that the decision to afford any individual defendant mercy violates the Constitution. *Furman* held only that, in order to minimize the risk that the death penalty would be imposed on a capriciously selected group of offenders, the decision to impose it had to be guided by standards so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant."

Accordingly, we find appellant's first proposition to be without merit.

In his second proposition of law, appellant contends

that the Ohio statutory scheme places unconstitutional limitations upon the consideration of mitigating circumstances. This court has previously upheld the constitutionality of Ohio's scheme for establishing mitigating circumstances (*State* v. *Bayless* [1967], 48 Ohio St. 2d 73; *State* v. *Bell, supra*; and *State* v. *Weind, supra*) and need not here reconsider the issue.

In the third proposition, appellant urges that R. C. 2929.04(B) is unconstitutional in that requiring the defendant to bear the risk of nonpersuasion in a mitigation hearing violates the due-process requirements of the Ohio and United States Constitutions. This argument has been previously determined to be without merit. The fifth paragraph of the syllabus in *State* v. *Downs* (1977), 51 Ohio St. 2d 47, states:

"The provisions of R. C. 2929.03(E) that 'if the court finds * * * that none of the mitigating circumstances listed in division (B) of Section 2929.04 of the Revised Code is established by a preponderance of the evidence, it shall impose the sentence of death on the offender,' require that the defendant bear the risk of nonpersuasion during the mitigation hearing, but does not impose an unconstitutional burden upon a defendant which would render the Ohio statutory framework for the imposition of capital punishment unconstitutional."

Accordingly, further discussion of this issue is not merited.

Appellant next asserts that the statutory definition of "reasonable doubt," set forth in R. C. 2901.05, dilutes the constitutional requirement that the state prove the defendant guilty beyond a reasonable doubt. Pursuant to Crim. R. 30,[1] this court need not address itself to this alleged error as the appellant failed to object to the jury instruction on

---

[1] Crim. R. 30 reads, in relevant part:

"A party may not assign as error the giving or failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. * * * "

"reasonable doubt." *State* v. *Williams* (1977), 51 Ohio St. 2d 112.

Apart from this proposition being defective procedurally, we are constrained to reject appellant's assertion that the mandated definition of "reasonable doubt" is constitutionally deficient. We are cognizant of the difficulty inherent in any attempt to define this abstract legal concept. The United States Supreme Court recognized this problem in *Miles* v. *United States* (1880), 103 U. S. 304, at page 312: "Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." Scrutiny of the definition provided by the General Assembly in R. C. 2901.05 reveals a substantial similarity to the explanation of "reasonable doubt" upheld in *Holland* v. *United States* (1954), 348 U. S. 121.[2] In *Holland, supra*, at page 140, the United States Supreme Court found, concerning "reasonable doubt," that "the instruction as given was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some. * * *"

The General Assembly has attempted, in R. C. 2901.05 and the definition of "reasonable doubt" therein, to provide not only a degree of consistency as to the meaning of the term throughout the courts of this state, but also to have a definition comprehensible to all the members of the jury and not merely those trained in the subtle nuance of legalese. Considering the inherent difficulty in defining

---

[2]R. C. 2901.05 defines "reasonable doubt" as:

"(D) 'Reasonable doubt' is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs."

The trial judge's definition of "reasonable doubt," scrutinized in *Holland* v. *United States*, at page 140, is the following:

"[T]he kind of doubt * * * which you folks in the more serious and important affairs of your own lives might be willing to act upon."

this abstract concept of reasonable doubt, the similarity of the definition under consideration with that in *Holland, supra,* and the beneficial aspects of the legislative mandated definition, we find that the General Assembly has pronounced a rational definition of "reasonable doubt" which, when taken as a whole, correctly conveyed the concept of "reasonable doubt" to the jury. The fourth proposition of law is overruled.

## II.

Appellant's next three propositions of law raise the issue of the sufficiency of the evidence to establish beyond a reasonable doubt that either the appellant or any of the co-conspirators purposely killed the decedent. Appellant does not argue that the evidence failed to demonstrate that the decedent was purposely murdered. The 30 stab and incised wounds alone tend to indicate such a purpose. Instead, appellant asserts that, since the state failed to prove the identity of the actual person who purposely committed the killing, appellant can not be convicted of aggravated murder or the actual murder under the complicity statute.

The Court of Appeals correctly identified the threshold inquiry as being: "* * * not whether there is proof beyond a reasonable doubt as to the identity of the actual killer or killers but rather whether, once testimony of the conspiracy to kidnap had been offered, is there proof beyond a reasonable doubt that one or more of the conspirators killed Crawford during the commission of the kidnapping."

Since there was no eyewitness testimony of the murder, the state relied upon circumstantial evidence to prove that either the appellant or one of the co-conspirators killed the decedent. Essentially relying on the state's inability to place either the appellant or any of the co-conspirators with the deceased at the time of the stabbing, appellant asserts that the circumstantial evidence presented by the state was insufficient to prove beyond a reasonable doubt that either the appellant or one of the co-conspirators purposely murdered the deceased. Our consideration is limited to an examination of the record to determine only the suf-

ficiency of the evidence produced. *State* v. *Sheppard* (1956), 165 Ohio St. 293; *State* v. *Stewart* (1964); 176 Ohio St. 156. Upon a perusal of the record in the case *sub judice*, we find that there was sufficient evidence of such a conclusive and persuasive force presented to the jury for it to determine on the facts, as it found them to be, that there was no reasonable hypothesis other than guilty and accordingly to decide that either the appellant or one of the co-conspirators purposely murdered the deceased. *State* v. *Sheppard, supra.*

In his seventh proposition of law, appellant argues that, even if the state proved that a co-conspirator had purposely caused decedent's death, the state had to further prove beyond a reasonable doubt that appellant shared the purposeful intent to kill. This proposition of law is clearly without merit. First, the record contains sufficient evidence upon which the jury could find that appellant purposely killed the deceased. Second, we find that the killing of the decedent during the commission of the kidnapping, where the deceased was forcefully abducted, the abduction was followed by demands of a ransom inferring death upon a failure to pay, and the existence of evidence that the conspirators had violent weapons, to be a natural and probable consequence of the common plan, which may be presumed by the jury to have been intended, and, unless a contrary intention appears from all the evidence, such evidence is sufficient to allow the jury to find a purposeful intent to kill. *State* v. *Lockett* (1976), 49 Ohio St. 2d 48.

### III.

Appellant's proposition that the trial court erred in denying his motion to suppress the items seized during the search of the 1966 Chrysler, the 1971 Ford station wagon and Garside's rented house, pursuant to search warrants issued by the federal district court, is without merit. The substance of this claim is that the affidavits for the warrants were insufficient to support a finding of probable cause to search. Appellant asserts that they failed to demonstrate not only a criminal activity by appellant, but

also the reliability of the informant. The record simply does not support these alleged deficiencies. Briefly summarizing the salient portions of the affidavits, we find that they recited the events within the informant's personal experience, *i. e.*: (1) the informant heard Wysocki mention that a $250,000 ransom would be demanded for the deceased's release; (2) he heard comments by Wysocki to Garside concerning instructions regarding ransom payment; (3) he heard Wysocki make a comment that the deceased would be killed upon receipt of the ransom; and (4) that he knew both Wysocki and Garside. Furthermore, the affidavits, in addition to containing collaborating evidence from FBI surveillance, stated that the confidential informant had provided information in the past several years which had proven to be reliable.

It is generally held that affidavits for a search warrant may be based on the hearsay testimony of a confidential informant, if the affidavits incorporate a substantial basis for crediting the hearsay. *Jones* v. *United States* (1960), 362 U. S. 257. Under *Aguilar* v. *Texas* (1964), 378 U. S. 108, in order for the magistrate to find a "substantial basis" for crediting the hearsay, the affidavit must include (1) information about the facts upon which the informant based his allegation of criminal activity and. (2) some of the underlying circumstances from which it can be concluded that the informant was credible and his information reliable.

In *State* v. *Karr* (1975), 44 Ohio St. 2d 163, this court noted that a common and accepted basis for the informant's information is his personal observation of the facts or events described to the affiant. *United States* v. *Harris* (1971), 403 U. S. 573; *Jones* v. *United States, supra; Rugendorf* v. *United States* (1964), 376 U. S. 528. These observations, as in the instant cause, may be given additional weight by police surveillance and information. Also, in *State* v. *Karr, supra,* this court found that a statement that the informant has been reliable in the past was sufficient to fulfill the second prong of the *Aguilar, supra,* test. Clearly, the affidavits in the instant cause complied with the require-

ments pronounced in *Aguilar, supra.* In *United States* v. *Ventresca* (1965), 380 U. S. 102, 108, the Supreme Court of the United States stated the following: ..

"* * * the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

Thus, heedful of the sound admonition in *United States* v. *Ventresca, supra,* we find that the affidavits for the search warrants sufficiently demonstrated that probable cause for the searches existed.

### IV.

Next, appellant urges that the trial court erred in overruling his motion to suppress the evidence which was seized as a direct result of the FBI's having carried out alleged unlawful wiretaps. The focal point of appellant's contention is that the government failed to qualify for the exception established in Section 2518(7), Title 18, U. S. Code, which allows a wiretap without a warrant if an application for judicial approval is later sought. In pertinent part, Section 2518(7), Title 18, U. S. Code, reads:

"Notwithstanding any other provision of this chapter, any investigative or law enforcement officer * * * who reasonably determines that—(a) an emergency situation exists with respect * * * to conspiratorial activities characteristic of organized crime that requires a wire or oral communication to be intercepted before an order authorizing such interception can with due diligence be obtained, and (b) * * *, may intercept such wire or oral communication if an ap-

plication for an order approving the interception is made in accordance with this section within forty-eight hours after the interception has occurred, or begins to occur. * * *"

This court, although not bound by the determination of the two federal district courts in retroactively approving these wiretaps, pursuant to Section 2518(7), Title 18, U. S. Code, is not required to ignore that fact. Appellant does not contest the existence of probable cause in the retroactive approval of the writs, but contends that the affidavits failed to establish that (1) an emergency situation existed; (2) there were conspiratorial activities; and (3) the activities were characteristic of organized crime. In the cause *sub judice* we can not concur with appellant's contentions that the delay in establishing the retroactively authorized wiretaps and the fact that they had not been used in six other kidnappings in which a specific FBI agent was involved conclusively demonstrated the lack of an emergency. The Court of Appeals correctly stated that the issue of "emergency" turns on the facts alleged in the affidavits requiring judicial approval of the wiretaps rather than the time factor. There is no doubt that the instant cause presented an exigent circumstance, the imminent threat to the deceased's life. That this concept is clearly within the minimal intent of Section 2518(7), Title 18, U. S. Code, is evident by Senator Hart's ill-fated attempt to amend the present language of that section to restrict the "emergency situation" to one involving an imminent threat to human life. 114 Congressional Record, Part 10, Book 1 (No. 89, May 23, 1968), at S6191.

Similarly, appellant's contention concerning the other two requirements is without merit. The affidavits indicated the possible complicity of at least three malefactors in the perpetration of this crime. Finally, the affidavits, in asserting a possible violation of Section 1951, Title 18, U. S. Code, fulfilled the requirement of "activities characteristic of organized crime." Senate Report No. 1097 in 2 U. S. Code Congressional and Administrative Report

(1968), 2112, 2186, comments that the federal offenses listed in Section 2516, Title 18, U. S. Code, for which a wiretap may be authorized, were chosen either because they are intrinsically serious or because they are characteristic of organized crime. The report continues to state that a violation of Section 1951, Title 18, U. S. Code, is included in Section 2516, subparagraph (1)(b), Title 18, U. S. Code, those violations aimed at organized crime.

The affidavits, therefore, presented support that there was compliance with the provisions of Section 2518(7), Title 18, U. S. Code. The trial court's denial of the motion to suppress being proper, we reject appellant's proposition of law No. 9.

## V.

As proposition of law No. 10, appellant argues that he was prejudiced by the trial court's refusal to compel discovery of prior statements and of grand jury testimony by Wysocki. It is uncontroverted that Wysocki was not a co-defendant, having been granted immunity by the state. Accordingly, there is no merit to appellant's argument, for, in *State* v. *Lane* (1976), 49 Ohio St. 2d 77, this court stated, in the second paragraph of the syllabus:

"Where a prosecution witness is not a co-defendant, a trial court does not err in refusing to compel discovery of prior statements and of grand jury testimony given by that witness. (Crim. R. 16[B][2]; Crim. R. 16[B][3].)"

Additionally, we note that this alleged error is unsupported by the record. Appellant has conceded that there is no judgment entry denying his motion for discovery of Wysocki's statements and grand jury testimony. Furthermore, at the commencement of the *voir dire* examination, when the trial court inquired as to whether there were "any other motions that had not been ruled upon," counsel for appellant failed to raise any claim as to Wysocki's testimony or statements. In fact, the record reveals that, after Wysocki's direct-examination, counsel for appellant, in requesting an *in camera* inspection of Wysocki's prior statements, stated that appellant had been provided with sum-

maries of Wysocki's statements during two FBI interviews and a photocopy of the testimony before the grand jury.

Therefore, this proposition of law is rejected.

## VI.

In his propositions of law Nos. 11 and 12, appellant asserts that the trial court erroneously admitted certain evidence, in violation of the hearsay rule and the appellant's Sixth Amendment right to confrontation of witnesses. Under proposition of law No. 11, appellant asserts that the trial court erred in permitting a tape recording of the deceased's voice made by the appellant to be introduced in evidence and by allowing the jury to listen to the tape. In proposition of law No. 12, appellant contends that the trial court erred by allowing FBI agent Ware to testify as to how he happened to search a particular area for the deceased's body and as to who was with him on the search.

This court, in *State* v. *Lewis* (1970), 22 Ohio St. 2d 125, found that the hearsay rule is applicable to an extrajudicial statement which is offered for the purpose of establishing the truth of the matter asserted therein. In 6 Wigmore on Evidence (Chadbourn rev. 1976), 250, Section 1766, the author states:

"The theory of the hearsay rule * * * is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted*, the hearsay rule does not apply. * * *"

The record reveals that the tape recording was introduced by the state for the limited purpose of proving that the deceased was alive on December 8. This was necessary for the state's case, because Wysocki, although testifying that he had brought the tape recorder to the Garside house on the 8th, that he returned to Detroit the same day with

210

the tape and that appellant was at the Garside house during this time, testified he had not seen the decedent that day. The tape recording, having been introduced not for the purpose of establishing either the substance of the recording or the veracity thereof, but only to establish the fact that the deceased was still alive on the 8th, the day of the recording, we thus find neither a violation of the hearsay rule nor a denial of the right of confrontation of a witness. See *State* v. *Lewis, supra.*

Nor do we find that the trial court violated either the hearsay rule or the right of confrontation by permitting the testimony of agent Ware—that he was accompanied on the search by Scheurell and that the search was initiated at her request. The testimony of Ware as aptly phrased by the Court of Appeals was only a description of "an act of Sharon Scheurell, *i. e.,* the request to be taken to a designated location in Licking County." The testimony was simply a recount of the witness' personal experiences and did not reveal any extrajudicial statements of Scheurell.

Propositions of law Nos. 11 and 12 are rejected.

## VII.

Appellant next asserts that the trial court erred by allowing Brenda Porter, Scheurell's sister, to testify with regard to a conversation she had with Scheurell regarding a person named "Skip." Essentially, appellant urges that Porter's testimony of Scheurell's request for lodging for herself and "Skip" was inadmissible with respect to the reference to "Skip" as hearsay and the product of leading questions.

The Court of Appeals noted that on direct-examination appellant testified that he was taken to the Porter home by Scheurell and therefore found that appellant by his testimony had waived any claim of prejudice by this alleged error. Indeed, appellant's admission to visiting the Porter residence on December 9, 1975, clearly demonstrates the "harmless nature" of the error he alleges in this, his 13th proposition of law. Nor, can we find in the record any

support for appellant's noncommittal assertion that the admission of this testimony *may* have compelled appellant to testify concerning this point. The only possible utilization of Porter's testimony was to show appellant's association with Scheurell and his presence in the vicinity of Columbus shortly after the murder of the deceased. Absent the testimony of Porter and that of the appellant, the record contains other evidence associating the appellant with Scheurell and placing him in the Columbus area within the relevant time period. Therefore, no possible prejudice to the appellant having occurred as a result of Porter's testimony concerning "Skip," this proposition of law is without merit.

### VIII.

Appellant next complains because the prosecutor commented, in his opening statement, on telephone calls which were not introduced later in evidence, that the trial court erred in refusing to grant appellant's motion for a mistrial. This proposition of law is not well taken. Appellant's reliance on *Maggio* v. *Cleveland* (1949), 151 Ohio St. 136, is misplaced. The comments of the attorney were not on matters which he knew or should have known were inadmissible. In fact, not only did the prosecutor attempt to introduce the telephone records in evidence, only to be prevented by the trial court, but the Court of Appeals was of the opinion that the evidence was admissible to support Wysocki's testimony concerning the long distance phone calls made by the co-conspirators. Additionally, we find that these references to the phone calls in the opening statement were not harmful to the appellant. The trial court, on two separate occasions, admonished the jury that the opening statements did not constitute evidence. Nor were these remarks concerning the telephone calls so patently prejudicial that it is to be inferred that the jury failed to heed the admonition of the trial court. Therefore, we decline to interfere with the trial court's exercise of discretion in denying a mistrial when the substantial rights of the appellant were not prejudicially affected.

## IX.

In his proposition of law No. 15, appellant asserts that it was error for the trial court to allow the appellee to challenge a juror for cause simply because the prospective juror indicated that he would consider a witness' prior record when judging the witness' credibility. This court has consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *State* v. *Williams* (1977), 51 Ohio St. 2d 112; *State* v. *Gordon* (1971), 28 Ohio St. 2d 45; *State* v. *Davis* (1964), 1 Ohio St. 2d 28. Appellant having failed to object to the challenge for cause, this court will not address this proposition of law. See Crim. R. 30. Proposition of law No. 15 is rejected.

## X.

In his proposition of law No. 16, appellant alleges that the court erred by allowing items to be introduced in evidence that were never connected to the appellant or to the crime and thus had no probative value. The challenged items included (1) a multi-colored suitcase and its contents; (2) a grey suitcase and its contents which included a five-channel two-way radio, a 12-channel scanner and a pair of binoculars and a carrying case; (3) a necktie with sailboat images; and (4) a mask with blonde hair and a mask with black hair.

These items admitted in evidence contrary to appellant's assertion did possess probative value on the issues presented. They were seized pursuant to a search warrant from the 1971 Ford station wagon in which appellant, Garside and Scheurell were riding at the time of their apprehension by the FBI near Dayton. There was testimony that certain of these items had been in the custody of Scheurell, and furthermore the decedent's sister testified that the tie with sailboat images was similar to that worn by her brother. Appellant's assertions concerning these items relate to their weight and sufficiency, which is

a matter for the jury's consideration and not that of a reviewing court.

Pursuant to our finding upon the record that these items of evidence have some tendency to establish the truth or falsity of the matters at issue, appellant's proposition No. 16 is held to be without merit.

## XI.

In *State* v. *Hester* (1976), 45 Ohio St. 2d 71, 79, this court enunciated the test for effective counsel as:

"* * * [W]hether the accused, under all the circumstances, including the fact that he had retained counsel, had a fair trial and substantial justice was done."

The court then went on to state that application of the test must be on a case-by-case basis. This test was further explained in *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, wherein Justice Celebrezze, in writing for a unanimous court, stated, at pages 396-397:

"When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."

In the cause *sub judice,* appellant's contention that he was deprived of effective assistance of counsel is unsubstantiated by the record. Great reliance is placed by appellant upon statements made by his trial counsel to a newspaper reporter a few days after the jury returned a guilty verdict. The specific statements upon which appellant based his claim that counsel violated his essential duties to appellant were that the defense attorney felt "whipped from the start" and "[t]his was a hard case to get up for." However, this Detroit newspaper article has not been submitted in evidence and is not a matter of record.

On the issue of counsel's effectiveness, the appellant

has the burden of proof, since, in Ohio, a properly licensed attorney is presumed competent. *State* v. *Lytle, supra*;. *Vaughn* v. *Maxwell* (1965) 2 Ohio St. 2d 299; *State* v. *Williams* (1969), 19 Ohio App. 2d 234. The purported remarks of the trial counsel, not in the record, were found by the Court of Appeals to belie his performance as it appears in the record. We are constrained to agree. Appellant has not alleged one instance of ineffectiveness substantiated by the record. The mere statement that counsel did not go to Detroit to interview witnesses nor interviewed witnesses in Ohio is without meaning absent a showing that this action as it pertains to this case was a violation of the defense counsel's duty to his client. Moreover, appellant's statement that the attorney did not appear when the verdict was returned similarly lacks substance for appellant was at that time represented by his other co-counsel, and both defense counsel did participate in the mitigation hearing.

Concisely stated, appellant has failed to establish that his counsel was ineffective. Accordingly, we reject appellant's contention that he was denied effective assistance of his counsel during trial.

## XII.

In his proposition of law No. 18, appellant asserts that the court erred in permitting the appellee to introduce evidence of the defendant's fingerprints found in Garside's residence. Essentially, appellant argues that, because the prints were found upon items in the house susceptible to being transported, *i. e.*, soda bottles, a thermos bottle, a coffee jar, and a cigarette package, and further because of the inability to determine when the prints were made, this evidence was inadmissible.

In *State* v. *Hymore* (1967), 9 Ohio St. 2d 122, 128, this court recognized that the trial court has broad discretion in the admission and exclusion of evidence, and, unless it has clearly abused that discretion and prejudiced the defendant thereby, the court should be slow to interfere. In the instant case, the admission of the fingerprint

evidence was not an abuse of discretion. This court has held:

"Where a particular fact tends to render probable a material proposition in issue then that fact is relevant." *State* v. *Hymore, supra,* at page 128.

The evidence of appellant's fingerprints found upon the various articles in the house did tend to render probable his presence within this house where the decedent was held captive. The fact that they were found on articles easily movable or that the time of their creation could not be discerned goes to the credibility or weight of the evidence and not to its admissibility. Appellant's reliance on *State* v. *Miller* (1977), 49 Ohio St. 2d 198, is misplaced. The issue in that case was not the admissibility of the fingerprints, but whether the fingerprint testimony, absent an eyewitness, was sufficient to connect the defendant with the scene of the crime.

Additionally, the fingerprint testimony, in the instant case, was merely a corroboration of the testimony of Wysocki and the appellant as to appellant's presence in the Garside residence and could not have thereby been prejudicial to the appellant, assuming *arguendo* it was erroneously admitted.

### XIII.

Appellant's proposition of law No. 19 asserts that the verdict of guilty to the charge of aggravated murder is contrary to the weight of the evidence. Appellant, in this proposition, has reiterated an argument previously raised and rejected by this court. This argument is that the state failed to prove that either the appellant or his co-conspirators actually murdered the decedent. This court perceives no necessity to recount the evidence against appellant heretofore set forth. Having previously found that the jury was presented with sufficient evidence upon which it could return a verdict of guilty to the charge of aggravated murder against the appellant, we find this proposition of law to be without merit.

216

## XIV.

Appellant's proposition of law No. 20 asserts that he had ineffective assistance of counsel before the Court of Appeals and that his rights under the Sixth Amendment to the United States Constitution were thereby vitiated. It is uncontroverted that the brief of appellant's counsel before the Court of Appeals has been substantially incorporated into appellant's brief before this court and that counsel effectively argued before the Court of Appeals. The essence, then, of appellant's assertion is the failure of his counsel in the Court of Appeals to raise before that court the eight additional items allegedly requested by the appellant. The record of this case contains no such request.

As previously stated, it is presumed that the counsel provided for the appellant is adequate and the appellant has the burden to prove otherwise. *State* v. *Lytle, supra* (48 Ohio St. 2d 391). After a perusal of the record we find that appellant has not established his allegation of ineffective counsel. Assuming *arguendo* that appellant's attorney, contrary to appellant's request, did not raise the eight items, this noninclusion of the "additional" errors does not *per se* render his services ineffective. Appellant has failed to establish before this court that it was in any manner legally incompetent or ineffective to fail to present these additional errors. Indeed, it is readily apparent that nearly all the "additional" errors had been waived at the trial. Appellant's counsel having thus apparently chosen to concentrate on his client's meritorious arguments, it would seem not only illogical, but self-defeating, to cloud those issues by advancing other spurious claims.

Therefore, this court, finding under all the circumstances that appellant had a fair trial and an appeal and that substantial justice was done, rejects this proposition of law.

## XV.

Finally, appellant asserts, through his propositions of law Nos. 21 to 26, six allegations of error which were not

raised in the court below. In *State* v. *Williams, supra* (51 Ohio St. 2d 112), this court reaffirmed, in paragraph two of the syllabus, its adherence to the well-established law:

"The Supreme Court will not ordinarily consider a claim of error that was not raised in any way in the Court of Appeals and was not considered or decided by that court. (*Toledo* v. *Reasonover*, 5 Ohio St. 2d 22, approved and followed.)"

Appellant's propositions of law Nos. 21 through 26 are rejected.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, P. BROWN and SWEENEY, JJ., concur.