JUDGMENT: Judgment affirmed
ATTORNEYS:
 OPINION
This appeal is taken by defendant-appellant Bruce Steward from the judgment entered by the Court of Common Pleas of Crawford County convicting him of rape.
On the evening of August 16, 1997 defendant-appellant Steward and Connie Carroll, his cousin by marriage, were drinking and socializing together at the BG Bar in Shelby, Ohio with a group of mutual friends. As the evening progressed Steward and Ms. Carroll exchanged a kiss and shared some drinks. Nearing closing time the group left the bar together and had collectively decided to return to Ms. Carroll's sister's home to continue the festivities. While making their way home a fight ensued between Ms. Carroll and her sister. How serious the skirmish became is disputed, but, it was broken up and the group arrived safely home. Because she was tired, Ms. Carroll decided to go to her own home across the lot from her sister's. Later that evening Steward visited Ms. Carroll at her apartment conversing with her while he smoked a few cigarettes. Now inside her residence Steward proceeded to forcibly rape Ms. Carroll. Later that morning Ms. Carroll went to the hospital to ascertain the extent of her injuries and two days later she reported the incident to the police.
On January 11, 1997 Steward was indicted on one count of rape, a violation of O.R.C. 2907.02(A)(2). His jury trial commenced on May 12, 1998. On May 19, 1998 he was convicted of rape and subsequently sentenced to a term of ten years imprisonment. On appeal from that conviction Steward makes the following assignments of error:
 1. Appellant's conviction for rape is against the manifest weight of the evidence, in violation of Mr. Steward's right to due process under the fifth and fourteenth amendments of the United States Constitution and Section 16, Article 1 of the Ohio Constitution.
 2. The trial court erred to the prejudice of appellant by instructing the jury on reasonable doubt in a manner that allowed jurors to convict him based on a standard of proof below that required by the due process clause of the fourteenth amendment.
Steward's initial claim is that his conviction for rape is not supported by the manifest weight of the evidence. Initially, we observe that "on the trial of a case, either civil or criminal, the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Indeed, a judgment may be reversed on the weight of the evidence only if there is a concurrence of all three judges hearing the cause on appeal. Section 3(B)(3), Article IV, Ohio Constitution.
A claim that the verdict was against the weight of the evidence does not mean that the evidence to convict was insufficient or inadequate. "Weight of evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. In reviewing a claim that the conviction was against the manifest weight of the evidence the court considering the entire record:
 "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, paragraph three of the syllabus.
The power to reverse a conviction and order a new trial is discretionary and should only be used in exceptional circumstances when the evidence weighs significantly against the conviction. Id. at paragraph three of the syllabus.
The record reveals the following evidence offered by the State in favor of conviction:
Ms. Carroll testified as follows:
Q. And what did he do?
 A. Came over, started kissing on me and pushing me on the couch.
Q. And what did you do?
A. I asked him to leave and stop.
Q. Did he hold you down at any point?
A. Yes.
Q. What did he do?
A. Like what do you mean?
Q. Well you indicated that he started kissing on you —
A. Right.
 Q. ___ that he pushed you down on the couch. What happened next?
A. He pulled my underwear down and — I can't do this.
Q. You have to.
A. He forced his way on me.
 Q I have to ask you this. Did he insert his penis in your vagina?
A. Yes.
 Q. What happened next? I mean, was he holding you down at this point?
 A. Yes, because I tried to kick the phone off to get my aunt, her boyfriend downstairs, to come up. And that's what made him mad, so he held me down.
Q. Okay. When did he stop?
A. He wouldn't stop.
Q. Okay. Did he ejaculate?
A. Yes.
The chief testimony offered for the defense was that of Mr. Steward who testified as follows:
 Q. * * * During the time that you were there in Connie Carroll's apartment, tell the jury what went on after you went into the apartment with her.
 A. Well, I was smoking a cigarette, and she had went and got me an ashtray. And I was sitting there on the couch. And we started talking. And she went to the back of the apartment, which I guess was the bedrooms or bathrooms or whatever. And she come back out; she had a night shirt on and a pair of underwear. And I stood up. She came over and she started kissing on me, you know. So I started kissing her back. And one thing led to another and we had sex on the couch.
Q. You had sex with her at that time?
A. Yes.
Q. Did you force yourself * * * *
A. No, I didn't.
* * * * *
 Q. You were also asked that you were never in Connie's apartment on that night?
A. Yes, I was.
 Q. And you said, "I was never in that apartment that night," right?
A. Yes, I did.
Q. That was a lie?
A. Yes, it was.
Q. You were also asked if you ever had sex with Connie?
A. Yes.
Q. And you lied then too?
A. Yes, I did.
Steward claims lack of credibility of the State's main witness, Ms. Carroll concerning her testimony that Steward forcibly raped her. He claims she was bruised in a fight with her sister not by him. However, Ms. Carroll's testimony in this regard was contradicted only by Steward's friend James Robertson. The testimony of numerous witnesses presented by the prosecution corroborated much of what Ms. Carroll had said concerning the matter. The testimony included:
Sandra Carroll, Connie's Sister
Q. Okay. Did you ever hit Connie?
A. Not to my knowledge, no.
 Q. Did you ever do anything to Connie that would have left a bruise on her?
A. I pulled her hair.
Connie Carroll
 Q. * * * What was the nature of this fight? Was it oral argument? Was it a fistfight? What was it?
A. No.
Q. Anything that would have left bruises on you at the time?
A. No.
Harold A. Forwith, Connie's Brother-in-law
 Q. What went on between the two of them? * * * Pushing each other around?
A. Yes we had to break it up, me and her boyfriend.
Q. See any fists thrown?
A. A shoe thrown. A shoe.
James Robertson, Friend of Steward
 Q. What did you observe about the confrontation? What went on, the best you recall?
 A. It was pretty heated. They stood toe to toe, kicking, hitting, scratching, the whole nine yards.
Steward claims that as a whole the manifest weight of the evidence supported an acquittal not a conviction. However, to the contrary, the foregone portions of the record disclose substantial credible evidence upon which a jury believing it could find Steward guilty beyond a reasonable doubt. As a result, no error having been shown Steward's first assignment of error is overruled.
Steward next asserts that the jury was instructed about the definition of reasonable doubt in such a manner that the jury convicted him on a lower standard of proof than that required by the Due Process Clause of the Fourteenth Amendment.
Failure to object to "improprieties in jury instructions as required by Criminal Rule 30 is a waiver of the issue on appeal." State v. Williams (1977) 51 Ohio St.2d 112,364 N.E.2d 1364. The appellate courts of Ohio have consistently held that errors which could have been called to the trial court's attention at the time when such errors were made and could have been avoided but were not will not be heard on appeal. Id. at 112.
This prohibition is not absolute. The reviewing court may overturn an unpreserved issue for plain error. State v. Craft (1977), 52 Ohio App.2d 1, 367 N.E.2d 1221. "A `plain error' committed by a trial court and reviewable on appeal, is an obvious error shown by the record which is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings." Id. at paragraph one of the syllabus.
O.R.C. 2901.05 defines reasonable doubt as follows:
 Reasonable doubt is present when, jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. Reasonable doubt is a doubt based upon reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his or her own affairs.
The instruction on reasonable doubt given to the jury by the court was identical to the above definition contained within O.R.C. 2901.05. The record discloses that Steward's attorney did not object to the jury instructions. Despite this omission, Steward claims that use of such instruction was plain error to be noticed by this court. However, the Supreme Court of Ohio has found that "the definition of `reasonable doubt' set forth in R.C.2901.05 correctly conveys the concept of reasonable doubt, and, therefore is not an unconstitutional dilution of the state's requirement to prove guilt beyond a reasonable doubt." State v. Nabozny (1978) 54 Ohio St.2d 195 (vacated on other grounds.)
As a result, no error having been shown Steward's second assignment of error is also overruled and the judgment of the Court of Common Pleas of Crawford County is affirmed.
Judgment affirmed.
HADLEY and SHAW, JJ., concur.