[Cite as *State v. Brabson*, 2014-Ohio-5277.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 100969

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**DAVID J. BRABSON**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-571514-A

**BEFORE:** E.T. Gallagher, J., Celebrezze, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** November 26, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY:   Paul Kuzmins
       Erika Cunliffe
Assistant Public Defenders
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:   Steven N. Szelagiewicz
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, David Brabson ("Brabson"), appeals his convictions and sentence. We find no merit to the appeal, and affirm.

{¶2} Brabson was charged with one count of kidnaping in violation of R.C. 2905.01(A)(3), one count of felonious assault, in violation of R.C. 2903.11(A)(1), and one count of felonious assault, in violation of R.C. 2903.11(A)(2). All the charges included notice of prior conviction and repeat violent offender specifications.

{¶3} The victim, Candace White ("White"), testified at trial that, at the time of the events giving rise to this case, she was living with Brabson and her children in an apartment in Cleveland. On January 19, 2013, Brabson asked to borrow White's car, and when White refused the two began arguing in a store parking lot. When White exited the car to enter the store, Brabson sat himself in the driver's seat and refused to move when White returned. White reported Brabson's conduct to police, who happened to be in the parking lot, and they ordered Brabson out of the car. White subsequently drove to her sister's house.

{¶4} White returned home at approximately 1:00 a.m., and another argument ensued. Brabson demanded the car keys and asked White why she went to the police. White replied that she did not want to talk about it, and Brabson became violent. White explained:

> [A]fter I said that is when he stomped my foot and then he grabbed me. He was trying to choke me but he was holding my neck down like this. And he had my body in between his legs and he squeezed my body to the fact that I couldn't breathe anymore. And then he was pulling my hair and his foot in the back of my neck pushing down while he pulling my hair.
>
> * * * [O]nce he let me go from that he asked me again * * * and I ignored him. That's when he took the belt off and started beating me with the belt.

When the beating stopped, White fled from the house and ran down the street. Brabson grabbed her and dragged her back to the apartment.

{¶5} Shortly thereafter, police officers started banging on the front door. Paisley Calhoun ("Calhoun"), who lived in the apartment above White's residence in a two-family duplex, had heard the screaming and called the police. By the time the police arrived, White was in the bathroom washing her face. Brabson instructed White not to answer the door. According to White, Brabson stated, "I'm not going to jail," and he refused to let her out of the bathroom until after the police had gone. White further testified: "I would have screamed or something but I was afraid."

{¶6} White reported the incident to police the next day. She identified belt shaped bruises on her face, neck, and arm, and police took photographs of her injuries, which were admitted into evidence at trial. White testified that without makeup, marks were still visible on her face. In the days following the incident, Brabson gave White letters using a fake name but she recognized his handwriting. In the letters, Brabson referenced their relationship and stated that he used a fake name to get around a protective order that prohibited him from contacting White. Brabson also admitted in the letters that he should not have put his hands on her and that she did not need to proceed with the case against him.

{¶7} Detective Jayson Young ("Young") testified that he interviewed Brabson as part of his investigation. Brabson told Young that the argument was verbal, and he had no idea how White got the marks on her face, arm, and neck. He admitted that the police ordered him out of White's car and that he waited with White in the bathroom while the police banged on their front door. He claimed they did not open the door because they were both wrong for arguing. Young also observed White's injuries and took photographs.

**{¶8}** At the conclusion of the trial, a jury found Brabson guilty of kidnaping in Count 1, in violation of R.C. 2905.01(A)(3), and the lesser included offenses of attempted felonious assault, in violation of R.C. 2903.11(A)(1) and 2923.02, and assault, in violation of R.C. 2903.13, in Count 2. In Count 3, the jury found Brabson not guilty of felonious assault under R.C. 2903.11(A)(2). The court found Brabson guilty of the notice of prior conviction and repeat violent offender specifications in Count 1. The court sentenced Brabson to an aggregate six-year prison term and a mandatory five years of postrelease control. Brabson now appeals and raises six assignments of error.

### Attempted Felonious Assault

**{¶9}** In the first assignment of error, Brabson argues his attempted felonious assault conviction should be reversed because it is not a cognizable offense under R.C. 2903.11(A)(2) and 2923.02. He contends that because the term "attempt" is already in the felonious assault statute, the attempt statute does not apply.

**{¶10}** However, in Count 2 of the indictment, Brabson was charged with felonious assault in violation of R.C. 2903.11(A)(1), not 2903.11(A)(2). R.C. 2903.11(A)(1) states that "[n]o person shall knowingly * * * [c]ause serious physical harm to another." By contrast, R.C. 2903.11(A)(2) states that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another" with a deadly weapon. Thus, "attempt" is not an element of R.C. 2903.11(A)(1).

**{¶11}** The jury found Brabson not guilty of felonious assault with a deadly weapon, in violation of R.C. 2903.11(A)(2). It found him guilty of attempted felonious assault pursuant to R.C. 2903.11(A)(1), which does not include the "attempt" element, and R.C. 2923.02, the attempt statute. R.C. 2923.02(A) states that "[n]o person, purposely or knowingly, and when

purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." Since R.C. 2903.11(A)(1) does not require proof of an attempt to commit serious physical harm, the jury could find Brabson guilty of the lesser included offense of attempted felonious assault pursuant to R.C. 2923.02(A).

{¶12} Therefore, the first assignment of error is overruled.

### Sufficient Evidence of Deadly Weapon

{¶13} In the second assignment of error, Brabson argues there is insufficient evidence to sustain his felonious assault conviction. He contends that his belt was not a deadly weapon within the meaning of R.C. 2923.11(A). However, as previously stated, the jury found Brabson not guilty of felonious assault with a deadly weapon in violation R.C. 2923.11(A)(2). The jury apparently agreed there was insufficient evidence of a deadly weapon.

{¶14} The jury found Brabson guilty of attempted felonious assault, in violation of R.C. 2903.11(A)(1) and 2923.02(A). Proof of a deadly weapon is not an element of this offense. Therefore, whether Brabson used a deadly weapon is not relevant to his attempted felonious conviction under R.C. 2903.11(A)(1).

{¶15} The second assignment of error is overruled.

### Evidence of Kidnaping

{¶16} In the third assignment of error, Brabson argues there was insufficient evidence to sustain his kidnaping conviction. He contends the state failed to present evidence that he restrained White's liberty "with purpose to terrorize or inflict serious physical harm on the victim," as required by R.C. 2905.01(A)(3). In the fourth assignment of error, Brabson argues his kidnaping conviction is against the manifest weight of the evidence for the same reason.

Although the terms "sufficiency" and "weight" of the evidence are "quantitatively and qualitatively different," we address these issues together because they are closely related, while applying the distinct standards of review to Brabson's arguments. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶17} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶18} In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins* at 387. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id*. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶19} Brabson was convicted of kidnaping, in violation of R.C. 2905.01(A)(3). R.C. 2905.01(A)(3) states, in relevant part, that "[n]o person, by force, threat, or deception * * * shall

remove another from the place where the other person is found or restrain the liberty of the other person * * * "[t]o terrorize, or to inflict serious physical harm on the victim." R.C. 2901.22(A) defines "purposefully," as follows:

> A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

{¶20} White testified that Brabson restrained her by squeezing her in between his legs and also by holding her neck to the floor with his foot while pulling her hair. Brabson argues that because these acts of restraint also constituted acts of assault, and the trial court determined that Brabson's kidnaping conviction does not merge with the assault conviction, there was no evidence of kidnaping. He also focuses on the time Brabson restrained White in the bathroom and argues there was no evidence that Brabson intended to harm or terrorize White during that time.

{¶21} However, there were other acts of restraint and movement that constituted kidnaping that were not accompanied by the specific acts of assault. Throughout this entire incident, Brabson sought to control White with the threat of violence, and White attempted to escape because she was afraid that Brabson would cause her further physical injury. In other words, Brabson used terror to maintain control over White. For example, when Brabson hauled White back into the house against her will, he knew she was frightened and therefore knew he was terrorizing her by dragging her back to the house where he could continue to injure her. Indeed, White testified that when the police knocked on the door after Brabson brought her back to the house, White remained silent instead of screaming for help because she was afraid of

Brabson. Therefore, there was sufficient evidence of kidnaping in violation of R.C. 2905.01(A)(3).

{¶22} White's testimony about this incident was credible, and other witnesses and photographs corroborated her testimony. Even Brabson admitted to police that he argued with White but claimed he had no idea how she sustained her injuries. Brabson's self-serving statement to police lacks credibility in light of the all the other evidence adduced at trial. Therefore, Brabson's kidnaping conviction was also supported by the weight of the evidence.

{¶23} The third and fourth assignments of error are overruled.

### Structural Error

{¶24} In the fifth assignment of error, Brabson argues the trial court committed structural error when it amplified the statutory definition of reasonable doubt. He contends the trial court's discussion about the meaning of "beyond a reasonable doubt," diluted its true meaning. As a result, Brabson argues, he was convicted under a standard that required less proof than the constitutionally mandated beyond a reasonable doubt standard.

{¶25} Structural errors are constitutional errors that "defy analysis by 'harmless error' standards because they affect the framework in which the trial proceeds, rather than just being error in the trial process itself." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). A structural error permeates the entire conduct of a trial so that the trial cannot reliably serve its function as a means for determining guilt or innocence. *Arizona v. Fulminante*, 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

{¶26} A structural error mandates a finding of "per se prejudice" and results in "automatic reversal." *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 20, *overruled on other grounds*, *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935

N.E.2d 26, ¶ 45. Although all structural errors are by nature constitutional errors, not all constitutional errors are structural. As a result, some constitutional errors can be deemed non-prejudicial so long as the error is harmless beyond a reasonable doubt. *State v. Payne*, 114 Ohio St.3d 502, 505, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 18. It is only in the rarest of cases that an error is held to be structural, thus requiring an automatic reversal. *Washington v. Recuenco*, 548 U.S. 212, 218, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006).

{¶27} The Ohio Supreme Court has cautioned against amplifying the legal definition of the phrase "beyond a reasonable doubt." *State v. Van Gundy*, 64 Ohio St.3d 230, 235, 594 N.E.2d 604 (1992). In *Van Gundy*, the defendant argued that the trial court's amplification of the statutory definition of "reasonable doubt" diluted the requirement that the state prove guilt beyond a reasonable doubt and thus rendered its charge erroneous and prejudicial. The Supreme Court held that in determining whether the amplification was prejudicial, the court had to consider how reasonable jurors would have understood the charge in its entirety. *Id*.

{¶28} "An instruction is prejudicial when it is 'of the type that could mislead the jury into finding no reasonable doubt when in fact there is some.'" *Id*., quoting *State v. Nabozny*, 54 Ohio St.2d 195, 202, 375 N.E.2d 784 (1978). If, however, the charge, taken as a whole "'conveyed the concept of reasonable doubt to the jury,' then the amplification will not found to be prejudicial." *Id*., quoting *Nabozny* at paragraph two of the syllabus.

{¶29} The trial court in *Van Gundy* charged the jury, in relevant part, as follows:

The defendant is presumed innocent until his guilt is established beyond a reasonable doubt. The defendant must be acquitted of an offense unless the state produces evidence which convinces you beyond a reasonable doubt of every essential element of the offense charged.

Reasonable doubt is present when, after you have carefully considered and compared all the evidence, you cannot say you are firmly convinced of the truth of

the charge.  Reasonable doubt is a doubt based on reason and common sense.  Reasonable doubt is not mere possible doubt, because everything relating to human affairs, or depending on moral evidence is open to some possible or imaginary doubt.  Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.

The court then amplified upon this statutory language by instructing:

If after a full and impartial consideration of all the evidence you are firmly convinced of the truth of the charge, the state has proved its case beyond a reasonable doubt.  If you are not firmly convinced of the truth of the charge, you must find the defendant not guilty.

Taken as a whole, the Supreme Court found that the trial court's instruction was not prejudicial and correctly conveyed the concept that the state had to prove defendant's guilt beyond a reasonable doubt.  *Id*.

{¶30} Brabson did not object to the jury instructions and therefore waived all but plain error.  *Payne*, 114 Ohio St.3d at 23, 873 N.E.2d 306, ¶ 23; Crim.R. 52(B).  However, we find no error in the trial court's charge in this case.  During voir dire, the court discussed the concept of reasonable doubt and explained that reasonable doubt does not require the absence of all doubt.  As an example, the court explained that although we have almost no doubt that the sun will rise tomorrow, there is a slim possibility that an asteroid may collide with the earth and knock it out of its regular rotation.  This is not likely to happen.  One might say it is not reasonable to believe that would happen.  But it is not impossible.  Following this discussion, the court further stated:

So there's always some imaginary or possible doubt.  And there's always going to be some doubt because you're depending on what other witnesses are telling you.  You have to decide whether they're accurate, whether you believe them.  So there will always be some doubt.

The trial court also went into a discussion about how television and pop-ups on computer screens do not reflect the real world. The court apprised the jury not to expect "something you see on TV."

{¶31} The trial court later provided the statutory definition of "reasonable doubt" during it charge and stated:

> What then is reasonable doubt? The legislature of Ohio defines reasonable doubt as follows: Reasonable doubt is present when, after you have carefully considered and compared all the evidence, you cannot say you are firmly convinced of the truth of the charge. Reasonable doubt is doubt based on reason and common sense. Reasonable doubt is not mere possible doubt because everything related to human affairs or depending on moral evidence is open to some possible or imaginary doubt.
>
> Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.

{¶32} Although the trial court amplified the definition of reasonable doubt, we cannot say the amplification prejudiced the outcome of the trial and certainly was not a structural error. The amplification in this case occurred during voir dire and, by itself, would not have provided a complete definition, and without more, could be misleading. However, in the charge the court provided the statutory definition of "reasonable doubt" and explained that it was defined by the state legislature. The court correctly conveyed the concept that the state must prove the defendant's guilt beyond all reasonable doubt. Therefore, taken as a whole, the court's instruction on reasonable doubt was not prejudicial.

{¶33} It is nevertheless important to heed the Supreme Court's warning:

> [T]here is always a danger in giving instructions that go beyond the statutory definitions. * * * There is inherent difficulty in any attempt to define the abstract concept of reasonable doubt and further attempts do not usually result in making it any clearer in the minds of the jury.

*Van Gundy*, 64 Ohio St.3d at 235, 594 N.E.2d 604.

**{¶34}** The fifth assignment of error is overruled.

## Jury Verdict

**{¶35}** In the sixth assignment of error, Brabson argues his kidnaping conviction is void because the court failed to instruct the jury that they must unanimously agree that all the elements of kidnaping were proven beyond a reasonable doubt. He contends the jury instructions allowed him to be convicted by a non-unanimous jury verdict.

**{¶36}** The Ohio Supreme Court held that although the jury must be unanimous "as to guilt for the single crime charged, * * * [u]nanimity is not required, * * * as to the means by which the crime was committed so long as substantial evidence supports each alternative means." *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 49.

**{¶37}** In closing arguments, the state suggested three alternative kidnaping scenarios. Specifically, the prosecutor explained:

> As far as the kidnaping. * * * Look at the elements. Did he restrain her liberty? Yes. He threw her on the bed, he held her down. He dragged her back when she ran outside, tried to get away. He blocked the bathroom door so she couldn't get out.

**{¶38}** In *Gardner*, the Ohio Supreme Court distinguished between "alternative means" and "multiple acts" cases. A case involves "multiple acts" when several acts are alleged, and any one of the acts could constitute the crime charged. *Id.* A case involves "alternative means" when "a single offense may be committed in more than one way." *Id.* Although the jury must be unanimous "as to guilt for the single crime charged, * * * [u]nanimity is not required * * * as to the means by which the crime was committed so long as substantial evidence supports each alternative means." *Id.* (noting that, in "reviewing an alternative means case, the court must

determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt").

{¶39} The Ohio Supreme Court discussed the issue of juror unanimity with respect to alternative means of committing rape in *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315. There, the trial court instructed the jury "to determine whether McKnight, by force, threat or deception, *did remove* [the victim] from the place where she was found or *restrain* [the victim] of her liberty." (Emphasis sic.) *Id*. at ¶ 227. McKnight argued that the instruction deprived him of a unanimous jury verdict because the jury was instructed on alternative means for committing kidnaping. The Supreme Court rejected that argument and concluded the kidnaping instruction was proper "because the alternatives were given to the jury disjunctively." *Id*. at ¶ 228, citing *State v. Nields*, 93 Ohio St.3d 6, 30, 752 N.E.2d 859 (2001); *State v. Cook*, 65 Ohio St.3d 516, 527, 605 N.E.2d 70 (1992).

{¶40} In reaching this conclusion, the *McKnight* court explained that "[j]urors need not agree on a single means for committing" the offense, because different "'jurors may be persuaded by different pieces of evidence, even when they agree on the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.'" *Id*., quoting *Schad v. Arizona*, 501 U.S. 624, 631-632, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), quoting *McKoy v. North Carolina*, 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). *See also State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 186-188 (concluding that jurors need not agree on a single means for committing an offense).

{¶41} With respect to kidnaping, the trial court instructed the jury as follows:

> Before you can find the defendant guilty of kidnaping, you must find beyond a reasonable doubt that on or about the 19th day of January, 2013, * * * the defendant, by force, threat or deception purposely *removed* Candace S. White from the place where she was found or *restrained* her of her liberty for the purpose of terrorizing or inflicting serious physical harm upon Candace S. White.

The kidnaping instruction the trial court gave the jury in this case is identical to the instruction the Supreme Court upheld in *McKnight.* In addition, the trial court apprised the jury of the unanimous verdict requirement. The trial court instructed as follows:

> Unanimous verdict. Because this is a criminal case, the law requires that all twelve of you be in agreement before you can consider that you have reached a verdict.

> Verdict Form. The verdict forms will go with you to your jury room. * * * The first one here says Count 1, kidnaping. * * * It reads as follows:

> "Verdict. We the jury in this case, being duly impaneled and sworn, do find the defendant, David Brabson * * * [guilty or not guilty] of kidnaping in violation of Section 2905.01(A)(3) of the Revised Code as charged in Count 1 of the indictment."

> Then there is [sic] twelve lines underneath on the bottom part of the form. Each juror that agrees with that verdict must sign this form in ink.

**{¶42}** The verdict form for Count 1, kidnaping, contains 12 different signatures; one from each juror. The verdict is guilty and indicates that all 12 jurors agreed with that verdict. Therefore, the jury unanimously found Brabson guilty of kidnaping.

**{¶43}** The sixth assignment of error is overruled.

**{¶44}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
TIM McCORMACK, J., CONCUR