JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Curtis Seldon appeals his jury trial conviction for felonious assault with a firearm and repeat offender specifications and having a weapon under disability in case number 400192; and felonious assault on a police officer with a firearm and repeat offender specifications and having a weapon under disability in case number 402333. He was arrested on November 20, 2000 and indicted on December 18, 2000 and February 20, 2001.
 {¶ 2} Both indictments arose from the same incident. On November 2, 2000, defendant was hanging around outside a store near King-Kennedy, an apartment complex run by Cuyahoga Metropolitan Housing Authority (CMHA) when a stranger, Walter Evans (Evans) struck up a conversation with him. Evans, a resident of King-Kennedy, invited defendant up to his apartment.
 {¶ 3} As the men were entering the lobby of the building, defendant spoke with Henrietta Long, his former girlfriend (girlfriend). Their discussion became heated, and when the guard, Officer Perry, let the girlfriend into the corridor, which was accessible only through a second locked door, defendant forced his way in.
 {¶ 4} Defendant pushed Officer Perry against the wall, pinning him with his forearm against the officer's throat. Defendant then pulled a gun out of his waistband. Because of the position of the two men, the gun was pointed at Officer Perry as defendant pulled it out. Officer Perry heard the gun click twice before defendant pointed it down the hall at the girlfriend and the gun actually fired. The bullet was later recovered from the end of the hallway, and the spent casing was found at the scene.
 {¶ 5} Evans talked defendant into giving him the gun, which he then put down his shirt. By this time, other CMHA and Cleveland police had arrived. After a brief struggle, they subdued defendant, handcuffed him and placed him in a patrol car.
 {¶ 6} One of the officers stopped Evans, who was crossing the lobby towards his apartment. The officer retrieved the gun from him. Two of the bullets in the gun showed that the gun had misfired twice.
 {¶ 7} After his arrest and indictment, defendant was appointed counsel. On January 23, 2001, eighty-two days after his arrest, the court referred him for a psychiatric evaluation.[1] He was found competent to stand trial on April 24, 2001, and the court set his trial for April 30th, two days before the speedy trial deadline. Because he never posted bond, defendant's speedy trial time would have expired on May 2, 2001.
 {¶ 8} On the day of trial, defendant informed the court that he wanted new counsel. After much discussion, the court postponed trial. Defendant failed to obtain counsel and, after several pretrials, asked to proceed pro se. The court appointed a public defender to assist him and set the trial for June 25th.
 {¶ 9} Defendant filed speedy trial motions on February 5th, March 29th, May 21st, and June 22nd. The trial court denied these motions, as well as his motion for a new trial and motion to disqualify the judge. The case proceeded to a jury trial, after which defendant was convicted on all counts. He timely appealed.
 {¶ 10} Defendant states three assignments of error. For his first assignment of error, defendant states:
 {¶ 11} "I. APPELLANT CURTIS SELDON WAS DENIED HIS STATUTORY AND CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL."
 {¶ 12} The speedy time is tolled only by one of the factors listed in R.C. 2945.72:
 {¶ 13} "(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is
 {¶ 14} being determined, or any period during which the accused is physically incapable of standing trial;
 {¶ 15} "(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;
 {¶ 16} "(D) Any period of delay occasioned by the neglect or improper act of the accused;
 {¶ 17} "* * *
 {¶ 18} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion; * * *."
 {¶ 19} "To be effective, an accused's waiver of his or her constitutional and statutory rights to a speedy trial must be expressed in writing or made in open court on the record." State v. King (1994), 70 Ohio St.3d 158, syllabus.
 {¶ 20} In the case at bar, the trial was originally scheduled for April 30, 2001, two days before his speedy trial time would have run. On the day of trial, defendant's attorney advised the court that defendant wished to change attorneys. He also indicated that he told his client that "the only way to get some more time to hire a lawyer would be to execute a speedy trial waiver." Initially, defendant interrupted and said he was not going to execute a speedy trial waiver. However, his attorney at that time stated that defendant had "indicated to [him] that he is not going forward to trial today." Tr. at 12. The defendant then spoke at length explaining his dissatisfaction with his attorney and emphasized that defendant had not been able to see the evidence. He also was critical of being sent for psychiatric review because part of his speedy trial time was waived during the time he was under psychiatric review. At that time the court very clearly explained the effect of his request to change attorneys:
 {¶ 21} "THE COURT: Do you understand, Mr. Seldon, that if you delay today's trial by virtue of, you know, not having an attorney here to go forward, that none of that time counts for speedy trial. Do you understand that?
 {¶ 22} "THE DEFENDANT: But it would only suspend it.
 {¶ 23} "THE COURT: But —
 {¶ 24} "THE DEFENDANT: It would serve as a waiver to my right to a speedy trial.
 {¶ 25} "* * *
 {¶ 26} "THE COURT: * * * So, therefore, the law will suspend that speedy trial and start anew." Tr. 17-18.
 {¶ 27} The defendant continued to question how a speedy trial worked.
 {¶ 28} "THE DEFENDANT: What's the purpose of a speedy trial then?
 {¶ 29} "THE COURT: To give you your trial today within the time frame. And I'm here.
 {¶ 30} "THE DEFENDANT: The time frame was January the 31st.
 {¶ 31} "THE COURT: No, sir. It was tolled because you had to go to the psych clinic and you refused to go for your first meeting.
 {¶ 32} "THE DEFENDANT: I already had a psychological evaluation. I had one December the 12th. The second one was unnecessary. I was found competent to stand trial.
 {¶ 33} "THE COURT: But I believe there were reasons that wasn't accepted as a final report, and then you refused to go. And as soon as I got the reports, I've done everything immediately for you, Mr. Seldon, everything. * * *" Tr. 19-20.
 {¶ 34} After asking whether any plea negotiations had occurred, the court returned to emphasize how the time would run:
 {¶ 35} "THE COURT: Okay, Well, you know, I can easily grant you the time to find an attorney, but if you are under the mistaken impression that come Wednesday, if I'm in another trial or your attorney's not ready, your speedy trial has evaporated, I don't want you to do that.
 {¶ 36} "THE DEFENDANT: No, I'm not under that mistaken —
 {¶ 37} "THE COURT: Because the time will start all over today.
 {¶ 38} "THE DEFENDANT: I'm under the impression that it will be suspended like it have been for the courts.
 {¶ 39} "THE COURT: It's going to be suspended until I start the trial.
 {¶ 40} "MR. SHAUGHNESSY: Your Honor, I think that he —
 {¶ 41} "THE COURT: He doesn't — he's looking for a way out like that. I don't think he understands.
 {¶ 42} "THE DEFENDANT: I'm looking for the same treatment the courts give me. The Court suspend my time to speedy time till they have it. Why can't I?
 {¶ 43} "THE COURT: I can suspend it.
 {¶ 44} "MR. SHAUGHNESSY: Judge, I believe — and I've talked to Mr. Seldon about this. He understands the concept you're articulating. He's just using different words. He understands if he asks for a new lawyer here today that the time stops again, is ended.
 {¶ 45} "THE DEFENDANT: I understand that.
 {¶ 46} "MR. SHAUGHNESSY: He's using the analogy similar to what happened when he went to the Clinic, that all the time stopped, and at a time somewhat in the future when he has a lawyer and the Court is prepared, the time will begin again or anew.
 {¶ 47} "THE DEFENDANT: Not anew.
 {¶ 48} "MR. SHAUGHNESSY: Begin again, and that you've still got two days to get him to trial. So I think he understands the time is going to stop and he is not able to avail himself of [sic] speedy trial on Wednesday or in two days or anything like that if he gets new counsel.
 {¶ 49} Is that correct?
 {¶ 50} "THE DEFENDANT: Yes." Tr. 20-22.
 {¶ 51} The court then went on to inquire of defendant's sister what efforts had been made to secure an attorney. Again the court explained:
 {¶ 52} "THE COURT: You do understand I can toll this time and it's going to cover all the time that your attorney's going to have to get — it will be another three months before you go to trial. Do you understand that?
 {¶ 53} "THE DEFENDANT: Then so be it.
 {¶ 54} "THE COURT: Okay, I mean I don't care but that's all your time, not mine.
 {¶ 55} "THE DEFENDANT: Better than going to the penitentiary for years. I can do three more months.
 {¶ 56} "* * *
 {¶ 57} "THE DEFENDANT: I'm not going to be rushed into it, your Honor.
 {¶ 58} "THE COURT: I'm not asking you to be rushed into it. I'm just making you aware so that you can make intelligent decisions.
 {¶ 59} "THE DEFENDANT: If I have to sit three more months I been here six. Three more, I can handle it.
 {¶ 60} "THE COURT: As long as you understand that.
 {¶ 61} "THE DEFENDANT: I understand.
 {¶ 62} "* * *
 {¶ 63} "THE DEFENDANT: I'm not in no rush to go to no penitentiary.
 {¶ 64} "THE COURT: Okay. Then I will allow you to withdraw, Mr. Shaughnessy, and I will toll the statute of speedy trial right, and the Court will await notification by an attorney that they are your attorney, and that will be it. And then the Court will set up two or three pretrials, whatever is necessary, and we'll set a trial date.
 {¶ 65} "THE DEFENDANT: That's okay with me." Tr. 23-25. (Emphasis added.)
 {¶ 66} On May 15, the court met again, and defendant advised that his sister had still not yet secured an attorney. Again, the court advised the defendant that his attorney wanted some time to prepare the case. Again, there was discussion of how the speedy trial waiver worked. The judge explained that picking a jury is part of the trial; it is the beginning of trial. She asked him to let her know as soon as he selected an attorney because her trial calendar was quite full. She also advised the defendant that if he could not afford an attorney to let her know and she would appoint one for him. She concluded by saying: "* * * I don't want you sitting here. Especially if you're not the man that did these crimes. You should be out enjoying your life." Tr. 30-31.
 {¶ 67} The defendant, pro se, filed motions to dismiss for the court's failure to bring the defendant to trial within the speedy trial act. The court denied the motions on May 29th.
 {¶ 68} On June 1, 2001, the court met again to check on defendant's progress to hire an attorney. This was the first time that defendant indicated he might want to defend himself because he did not trust any court-appointed attorney. When the defendant asked whether he could defend himself, the court answered: "You can represent yourself with the advice of your attorneys. I'll appoint the public defenders to be your advisors." Tr. 38. The defendant also emphasized he still wanted "access to all the things that [he is] supposed to have," such as the bill of particulars and discovery, for which he indicated he had filed motions with the Court. Tr. 38-39. After advising the defendant that she believed he had been given what there was, the judge stated:
 {¶ 69} "THE COURT: * * * So then if you're going to represent yourself, you know, you have to go to trial in how many days?
 {¶ 70} "THE BAILIFF: Four.
 {¶ 71} "THE COURT: Four days. Are you ready?
 {¶ 72} "THE DEFENDANT: No. How can I do that? I need these things. I've got —
 {¶ 73} "* * *
 {¶ 74} "THE COURT: So, Mr. Seldon, you're telling this Court that you're no longer desirous of retaining an attorney, is that true?
 {¶ 75} "THE DEFENDANT: I'm going to get an attorney eventually, but meanwhile, I want to have all the things that I'm entitled to. I got — I'm entitled to get discovery.
 {¶ 76} "THE COURT: I'm going to tell you what we're going to do. You're going to have an attorney file an appearance with this Court by not later than June 11th.
 {¶ 77} "When June 11th comes, if you don't have an attorney, we're going to go to trial on this case on June 18th with advisors.
 {¶ 78} "Mr. Murray [the prosecutor], what I want you to do is, I want you have all discovery, whether it was requested or not, and a bill of particulars, whether it was requested or not, prepared and ready for this Court on June 11th.
 {¶ 79} "MR. MURRAY: Okay, Your Honor.
 {¶ 80} "THE COURT: Okay. And trial on this case is going to be — have that stuff ready for me on June 8th.
 {¶ 81} "Wait. What is today, June 1st?
 {¶ 82} "THE BAILIFF: Yes
 {¶ 83} "THE COURT: No, June 11th and then trial will be June 25th." Tr. 39-41. (Emphasis added.)
 {¶ 84} On June 11, 2001, the defendant announced that he would represent himself, whereupon the court appointed the Public Defender to assist him and reviewed the material the prosecutor had been ordered to provide. The defendant then inquired about records from his initial appearance. The defendant stated he wanted the records because they were "directly related." He was advised that they were now in a separate misdemeanor case before a separate judge and he could ask the Public Defender to assist him in retaining these records. The prosecutor then turned over the packet to the defendant, and the court reaffirmed the trial date of June 25th. Tr. 44-47.
 {¶ 85} As noted by the King court, supra, any waiver of speedy trial rights requires documentation either in writing or in open court. Defendant here clearly waived his speedy trial rights for the period during which he was without counsel. Further, he personally requested the continuances, asking the court to allow him time for discovery and to seek new counsel. Both these factors serve to toll the speedy trial time.
 {¶ 86} "R.C. 2945.72(C) tolls from the speedy trial statute's requirements any period of time necessitated by the accused's lack of counsel. Section (C) tolls any period of delay occasioned by the neglect or improper act of the accused. Moreover, we have previously noted that section (E) tolls from the speedy trial statute's requirements any period of delay necessitated by reason of a motion made or instituted by the accused." State v. Cripple (1993), Cuyahoga App. No. 61773, 1993 Ohio App. LEXIS 2625, at *16. The record shows that the court repeatedly informed the defendant as to the effect of his requesting a change of counsel on his right to a speedy trial. The court announced that the trial would be postponed three months, and he said "so be it." He was not passive in the court's discussions with him, which always ended by his saying he understood. It is significant that the court set the trial date of June 25th with the full understanding by the defendant that the trial would proceed on that date, whether or not he had retained counsel. Thus he waived any right to a speedy trial up through that date.
 {¶ 87} Defendant's counsel on appeal claims defendant did not need any extra time; he would have needed extra time only if an attorney were appointed that required time to prepare the case. We fail to see this distinction. The trial judge made it quite clear that the date of June 11th was set, in part, as a deadline for the prosecutor to respond to the defendant's request for discovery and in part to provide an opportunity to announce whether the defendant had secured an attorney. The defendant was insistent about discovery. On June 1st, the court asked the defendant whether he was ready to proceed. He replied, "No. How can I do that? I need these things." Thus the court ordered the prosecutor to provide materials, some of which had already been provided to the defendant's prior counsel.
 {¶ 88} At the meeting on June 11th, the defendant made a request for records not in the case. He said he believed these records to be "directly related." Given defendant's insistence that he needed further records for his defense, defendant's argument that he would not have challenged the June 25th date if he had obtained counsel but disputed it because he was proceeding pro se is not persuasive.
 {¶ 89} Because of the defendant's continuing insistence that he would retain counsel "eventually" and the defendant's own admission that he was not ready to proceed on June 11th, the trial court properly deemed the defendant's right to a speedy trial was tolled until June 25th, a date the court announced well in advance and on the clear understanding that the trial would proceed whether or not he retained counsel. The record shows that the public defender participated in a significant portion of the trial: he examined witnesses and participated in side-bar conferences, made frequent objections and gave closing argument. Defendant agreed to the delays at the time the trial was first scheduled and later when it was rescheduled. We see no violation of the defendant's right to a speedy trial.
 {¶ 90} The first assignment of error is without merit.
 {¶ 91} For his second assignment of error, defendant states:
 {¶ 92} "II. THE COURT ERRED IN DENYING APPELLANT'S RULE 29 MOTION FOR ACQUITTAL AS THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION FOR FELONIOUS ASSAULT ON OFFICER PERRY OF [sic] MS. YOUNG."
 {¶ 93} Although this assignment of error states that the evidence was insufficient for both convictions, defendant's brief addressed only the assault on Officer Perry. An appellate court need not consider an assignment of error which is not argued in the brief. App.R. 12(A)(2);State v. Awan (1986), 22 Ohio St.3d 120. We will address, therefore, only the conviction for felonious assault on Officer Perry.
 {¶ 94} Defendant argues that he never intentionally pointed the gun at Officer Perry. Rather, he claims, because of their relative positions during the struggle, the gun was inadvertently pointed at the officer as he pulled it from his waistband. The state did not prove, he argues, that he intentionally pointed the gun at the officer or threatened him with it and that without this element the conviction for felonious assault cannot lie.
 {¶ 95} The elements of felonious assault are found in R.C.2903.11, which states:
 {¶ 96} "(A) No person shall knowingly do either of the following:
 {¶ 97} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 98} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
 {¶ 99} "* * *"
 {¶ 100} Defendant claims he did not knowingly try to harm the officer with his gun.
 {¶ 101} The appellate court's review of the case for sufficiency of the evidence is limited:
 {¶ 102} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" State v. Jenks (1991), 61 Ohio St.3d 259, syllabus paragraph two.
 {¶ 103} The court met this standard. Officer Perry testified that he heard the gun click twice before defendant pointed it at the girlfriend. "He drew the weapon out and he was pulling the trigger, I heard the trigger click once and heard it click twice, and he stretched his arm out in the direction of [the girlfriend] * * *." Tr. at 204. Further, he testified that he heard the gun click when it was coming out of defendant's jacket and that it was pointed at him when he heard it click. Another officer who examined the gun testified that two of the bullets bore marks showing that the gun had misfired twice.
 {¶ 104} The evidence presented at trial is sufficient to prove, if believed, that defendant knowingly pulled the trigger on the gun while it was pointed at the officer. The second assignment of error is without merit.
 {¶ 105} For his third assignment of error, defendant states:
 {¶ 106} "III. THE FELONIOUS ASSAULT CONVICTION REGARDING OFFICER PERRY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 107} Defendant argues that because the state presented "no testimony regarding motive or animus toward Officer Perry" the conviction of felonious assault is against the manifest weight of the evidence. Appellant's brief at 10. The appellate court's approach to a manifest weight argument differs significantly from its approach to a sufficiency argument:
 {¶ 108} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. Rep. 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.")." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 109} Defendant's only argument, the lack of motive for the felonious assault, lacks merit. "The statute does not require a proof of motive; the standard to be applied is purposeful conduct." State v.Thompson (Sept. 25, 1986), Cuyahoga App. No. 50977, 1986 Ohio App. LEXIS 8403, at *7.
 {¶ 110} Officer Perry testified that the gun clicked twice while it was pointed at him. From this evidence, the jury reasonably could have concluded that defendant's conduct was purposeful and that he intended to shoot him. Moreover, Officer Perry was preventing defendant from achieving his goal of shooting the girlfriend. Defendant was physically struggling with him, and it is not unreasonable for the jury to conclude that defendant intended to use the gun to stop Officer Perry from interfering. The motive and intent of offenders who, while in the course of committing a crime, attempt to shoot police officers is generally clear. They intend to eliminate the obstacle to their goal of committing the crime. That motive and intent does not need to be articulated as long as it can be inferred from the circumstances of the crime or the evidence presented.
 {¶ 111} "It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts. State v. Nabozny (1978), 54 Ohio St.2d 195; State v.Lockett (1976), 49 Ohio St.2d 48; State v Perryman (1976),49 Ohio St.2d 14; and State v. Eaton (1969), 19 Ohio St.2d 145." Statev. Johnson (1978), 56 Ohio St.2d 35, 38. See, also, State v. Chaney, Athens App. No. 01CA41, 2002-Ohio-2605 (officer's testimony of defendant's actions supplied sufficient proof of motive); State v.Thomas (Feb. 12, 2002), Franklin App. No. 01AP-730, 2002 Ohio App. LEXIS 504 (officer's testimony concerning defendant's dropping of drugs sufficient proof of motive for fight with officer); State v. Thompson, (Sept. 25, 1986), Cuyahoga App. No. 50977, 1986 Ohio App. LEXIS 8403, at *6 ("The natural, reasonable and probable consequence of defendant's voluntary act of shooting in the direction of the boys on the porch would result, if successful, in their death. The jury may infer intent to kill from these circumstances.") The manifest weight of the evidence in the case at bar, including the testimony of the officer and the two misfired bullets, supports the defendant's conviction.
 {¶ 112} The third assignment of error is overruled.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., AND KENNETH A. ROCCO, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Defendant refused to cooperate with the evaluation and finally was transferred from the jail to the North Coast Behavioral Center.