This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant, Orlando Powe, appeals from the judgment of the Summit County Court of Common Pleas, which convicted him of murder, felonious assault, and endangering children. We affirm.
{¶ 2} On June 28, 2001, the Summit County Grand Jury indicted Defendant on one count of murder, in violation of R.C. 2903.02(B), one count of felonious assault, in violation of R.C. 2903.11(A)(1), and one count of endangering children, in violation of R.C. 2919.22(B)(2) and (3). The predicate offenses to the murder charge were endangering children and felonious assault. Subsequently, the State supplemented the indictment and dismissed the original endangering children charge and replaced it with one count of endangering children, in violation of R.C.2919.22(B)(1). A jury trial followed. After the State's case-in-chief and at the close of all the evidence, Defendant moved for acquittal pursuant to Crim.R. 29. The trial court denied both motions. On February 14, 2002, the jury found Defendant guilty on all counts. Thereafter, the felonious assault verdict was merged with the murder verdict. At the sentencing hearing, on February 25, 2002, Defendant was sentenced to fifteen years to life for murder and eight years for endangering children. The trial court ordered the sentences to run consecutively.
{¶ 3} Defendant timely appeals, raising nine assignments of error. For ease of review, the assignments of error have been rearranged. Additionally, assignments of error three, four and five will be addressed jointly.
 ASSIGNMENT OF ERROR VI {¶ 4} "The [t]rial [c]ourt [e]rred in denying [Defendant's] motion to suppress certain incriminating statements made by [Defendant] to detectives under coercion."
{¶ 5} In his sixth assignment of error, Defendant asserts that the trial court erred when it denied the motion to suppress his incriminating statements. Specifically, Defendant maintains that the incriminating statements were the result of police coercion and thus not voluntarily given. We disagree.
{¶ 6} A trial court assumes the role of the trier of fact when considering motions to suppress and, therefore, is in the best position to determine issues of fact and witness credibility. State v. Snow (May 24, 2000), 9th Dist. No. 19742, at 2, citing State v. Klein (1991),73 Ohio App.3d 486, 488, citing State v. Clay (1973), 34 Ohio St.2d 250. Therefore, a trial court's ruling will not be overturned on appeal absent an error of law. Snow, supra, at 2, citing Klein, 73 Ohio App.3d at 488. "[T]he trial courts factual decision at a suppression hearing which rests upon the credibility of witness testimony is accorded `great deference.'"State v. Ward (July 31, 1996), 9th Dist. No. 95CA006214, at 3-4, citingState v. Robinson (Jan. 11, 1995), 9th Dist. No. 16766, at 12.
{¶ 7} One may waive the Fifth Amendment right against self-incrimination, if it is done "voluntarily, knowingly and intelligently." Miranda v. Arizona (1966), 384 U.S. 436, 444,16 L.Ed.2d 694. "Voluntariness" is the "absence of physical and psychological coercion on the part of the police." Ward, supra, at 3. In determining whether a defendant's confession is involuntarily induced, the court is to consider the totality of the circumstances and "look specifically at [d]efendant's age, mentality, and prior criminal experience; the length, intensity, and frequency of the interrogation; and the existence of physical deprivation or mistreatment; and the existence of any threat or inducement." Snow, supra, at 3, citing State v. Edwards (1976),49 Ohio St.2d 31, paragraph two of the syllabus.
{¶ 8} Additionally, when deciding if a defendant has impliedly waived his rights, "courts are to consider the circumstances surrounding the interrogation, including evaluation of the defendant's age, experience, education, background, intelligence, and capacity to understand the warnings given to him, the nature of his rights and the consequences of waiving those rights." Snow, supra, at 3, citing Fare v.Michael C. (1979), 442 U.S. 707, 725, 61 L.Ed.2d 197. The fact that a defendant chooses to speak upon being informed of his Fifth Amendment rights, is highly probative of the issue. Snow, supra, at 3-4, citingOregon v. Elstad (1985), 470 U.S. 298, 318, 84 L.Ed.2d 222. Furthermore, this Court has previously stated that "[t]he Ohio Supreme Court has consistently held that evidence of police coercion, such as physical abuse, threats, or deprivation of food, medical treatment or sleep is necessary to render a confession or a waiver involuntary." Snow, supra,
at 5, citing State v. Hill (1992), 64 Ohio St.3d 313, 318; State v.Cooey (1989), 46 Ohio St.3d 20, 28; State v. Clark (1988),38 Ohio St.3d 252, 261.
{¶ 9} Defendant in question is a thirty-one year old male who is able to read and write and possesses some college experience. After speaking with Detective Gaines via telephone, Defendant voluntarily went to the police station for an interview. Defendant acknowledges that he was Mirandized by the investigating officer prior to interrogation. He then waived his rights and stated that "he had nothing to hide" and was willing to give a statement. However, Defendant contends that the circumstances surrounding his interrogation were such that his confession was coerced by police conduct. Specifically, Defendant asserts that the questioning, which began in a large conference room, continued for two and one-half hours and was then moved to a smaller room with the intention of arresting Defendant. Defendant asserted that nothing happened until he was informed that his story was inconsistent with the injuries of the infant. Defendant maintains that near the end of the interrogation, Detective Hudnall stated that his story was "bullshit" and that "no jury would believe him." Defendant regards these remarks as "coercive statement[s]" on the part of the police that led him to confess to elbowing the deceased infant.
{¶ 10} Upon review of the record, we find that Defendant has failed to show that his confession was rendered involuntary by police coercion. No threats or promises were made by the police. Additionally, an "emotional reaction" does not constitute coercion. See Snow, supra, at 5. Coercion includes physical abuse, threats, and deprivation of food, medical treatment, sleep, etc. Snow, supra, at 4, citing Hill,64 Ohio St.3d at 318. It means "misconduct which overbore the defendants free will in such a way as to be a violation of the federal Constitution'sFourteenth Amendment[;]" such misconduct must have caused the confession. Ward, supra, at 3. These sorts of remarks made by an investigating officer to a suspect do not amount to police coercion. Consequently, we cannot find that the trial court erred when it denied Defendant's motion to suppress and found his confession to be voluntary. Defendant's sixth assignment of error is overruled.
 ASSIGNMENT OF ERROR VII {¶ 11} "The trial court erred to the prejudice of * * * [Defendant] by making certain statements regarding the facts of the case to potential jurors during voir dire."
{¶ 12} In his seventh assignment of error, Defendant maintains that the remarks made by the trial judge, during voir dire, were prejudicial to Defendant because they could be interpreted by the jury as statements of the "court[']s personal feelings." Defendant's assignment of error lacks merit.
{¶ 13} At all stages in a trial, a judge is to remain impartial and refrain from making comments which may influence a jury. State v.Boyd (1989), 63 Ohio App.3d 790, 794. The circumstances under which the trial judge's statements were made must be considered when deciding if they are prejudicial. State v. Ward (Apr. 1, 1998), 3rd Dist. No. 1-97-56, citing State v. Scott (1986), 26 Ohio St.3d 92, 96. Any remarks by a trial judge that may lead a jury to believe they are the court's opinion as to the facts of a case will result in prejudicial error. See Scott,26 Ohio St.3d at 96. It is important to note that in criminal cases, the challenged statements of a trial judge will not justify reversal where the defendant has failed to demonstrate prejudice. State v. Greene (Dec. 21, 1992), 3rd Dist. No. 9-92-18.
{¶ 14} To support his assignment of error, Defendant cites a portion of the statement made by the trial judge during voir dire. However, upon consideration of the circumstances under which the judge's statements were made, we cannot conclude that these remarks in any way prejudiced the fairness of Defendant's trial. When conducting the voir dire, the judge questioned a prospective juror. The judge had inquired of the juror whether any of the questions posed earlier "triggered a response in [her.]" The juror responded that "when it comes to graphic pictures, [she's] more of a very emotional person when it comes to children. [She] turn[s] away from pictures, or if it's a sad TV show regarding children, [she has] to turn the channel." The judge responded "Okay. That's a very understandable response. It's very hard to see graphic images that involve pain, violence for children, for anyone frankly; but, particularly, I think we respond with a child." The judge further explained that "because this is a case involving the death of a child, there's going to be some very specific, graphic evidence here. And if you're a member of the jury * * * you can't turn away from that. You do not have that option. You must review all of the evidence. If there are photographs, you must review those photographs. * * * It is very important to understand that you cannot return a verdict or be influenced in rendering a verdict of sympathy for anyone on an emotional basis as a result of the difficult facts that are presented." The judge concluded these remarks with "[y]ou have to be fair, impartial, and really dispassionate."
{¶ 15} Upon considering the judge's statements in the context of the surrounding circumstances under which they were made, we cannot conclude that the remarks prejudiced Defendant in any way. The judge was questioning a prospective juror about concerns she may have that would render her unable to give Defendant a fair and impartial trial. The judge was concerned that the juror would not be able to consider all the evidence presented in a fair manner and was not offering her opinion as to the facts of the case. Consequently, Defendant's seventh assignment of error is overruled.
 ASSIGNMENT OF ERROR III {¶ 16} "The conviction of * * * [Defendant] for the charges of murder, [f]elonious [a]ssault and [c]hild [e]ndangering in this case are against the manifest weight of the evidence and should be reversed."
 ASSIGNMENT OF ERROR IV {¶ 17} "The trial court erred to the prejudice of [Defendant] and in violation of [Crim.R.] 29(A), Article I[,] Section 10 of the Ohio Constitution and the Fourteenth Amendment to the Constitution of the United States, when it denied [Defendant's] motion for acquittal."
 ASSIGNMENT OF ERROR V {¶ 18} "The trial court incorrectly denied [Defendant's] motion for acquittal in violation of [Crim.R.] 29; [s]pecifically, there was not sufficient evidence to prove the offenses of [m]urder, [f]elonious [a]ssault, and [e]ndangering [c]hildren beyond a reasonable doubt."
{¶ 19} In his third, fourth and fifth assignments of error, Defendant challenges the adequacy of the evidence presented at trial. Specifically, Defendant asserts that the State failed to present sufficient evidence to support the trial court's denial of his Crim.R. 29 motion for acquittal and that his convictions for murder, felonious assault, and child endangering were against the manifest weight of the evidence presented at trial. An evaluation of the weight of the evidence is dispositive of the issues raised in these three assignments of error. Defendant's assignments of error lack merit.
{¶ 20} As a preliminary matter, we note that sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997),78 Ohio St.3d 380, 386.
{¶ 21} Crim.R. 29(A) states that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." However, if the record demonstrates that reasonable minds may reach differing conclusions as to the proof of material elements of a crime, a trial court may not grant a Crim.R. 29(A) motion for acquittal. State v. Smith, 9th Dist. No. 20885, 2002-Ohio-3034, at ¶ 7, citing State v. Wolfe (1988),51 Ohio App.3d 215, 216. "In essence, sufficiency is a test of adequacy."Smith at ¶ 7, quoting Thompkins, 78 Ohio St.3d at 386.
{¶ 22} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring).
{¶ 23} When a defendant maintains his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340. This power is to be invoked only in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id.
{¶ 24} As sufficient evidence is required to reach a jury, a finding that a conviction is supported by the weight of the evidence thus includes a finding of sufficiency. Smith at ¶ 9, quoting State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 5. Therefore, "a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Smith at ¶ 9, quoting Roberts, supra, at 4.
{¶ 25} Defendant was found guilty of, and appeals his convictions for, murder, in violation of R.C. 2903.02(B), felonious assault, in violation of R.C. 2903.11(A)(1), and child endangering, in violation of R.C. 2919.22(B)(1). Defendant argues that his conviction should be reversed because there was no evidence presented that proves, beyond a reasonable doubt, that he caused the death of the infant or that he caused or attempted to cause serious physical harm to the infant. Additionally, Defendant contends that there is no evidence in the record that proves, beyond a reasonable doubt, that he abused the infant.
{¶ 26} Murder is defined as "caus[ing] the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of [R.C.] 2903.03 or 2903.04[.]" R.C. 2903.02(B).
{¶ 27} In regards to endangering children, R.C 2919.22(B)(1) provides that no person shall abuse a child under eighteen years of age. The required mental state for R.C. 2919.22(B) offenses is recklessness.State v. Harden (Dec. 20, 2001), 8th Dist. No. 79764, citing State v.O'Brien (1987), 30 Ohio St.3d 122, paragraph one of the syllabus. One acts recklessly when "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).
{¶ 28} R.C. 2903.11(A)(1) defines felonious assault. The statute provides that "[n]o person shall knowingly * * * cause serious physical harm to another[.]" R.C. 2903.11(A)(1). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Serious physical harm includes "any physical harm that carries a substantial risk of death[.]" R.C. 2901.01(A)(5)(b)
{¶ 29} At trial, mother, Elbony Amos ("Amos") testified to having found the infant lying face down on her bed. She stated that he was stiff and not moving. Amos recalled that his face looked "smashed in" and was black and blue. She remembered seeing fluid and blood around the infant's mouth. Amos declared that Defendant was a good father and that she does not know what transpired that afternoon.
{¶ 30} James Timoch ("Timoch") of the Akron fire department, Kerry Jackson ("Jackson") of the Akron Police Department, Lisa Kohler ("Kohler") chief medical examiner, and Richard Steiner ("Steiner") emergency room physician, testified that lividity and rigor had set in as of 4:35 p.m. Additionally, Timoch testified to having found the baby lying face down on the mattress. He said there was blood underneath the baby's head and on the bed-sheet and that the baby was cold to the touch. Jackson stated that there was dried, bloody mucous around the baby's nose and lips.
{¶ 31} Kohler testified that she assisted in the performance of the autopsy. She noted that there were two small bruises on either side of the mouth that appeared to be recent in nature. Kohler stated that the "location of the bruising on either side of the mouth would be consistent with grabbing the face." She estimated that the infant had been dead for four to six hours before he was found. Kohler further testified to having found evidence of bruising of the scalp, a linear fracture behind the left ear underneath the bruising, and bleeding on the brain. She stated that these injuries were extensive as they covered a large portion of the left side of the infant's brain. Kohler further stated that the infant was a healthy baby and therefore sudden infant death syndrome ("SIDS") was no longer a viable theory because when a healthy infant is found dead suddenly, as in a SIDS type of case, "there should be no blood in the scalp at any point." In Kohler's expert opinion, the cause of death was "a blunt head injury due to a blow to the head." She explained that an elbow to the head could be a devastating one but qualified her explanation with the statement that she cannot specifically say that an elbow was used.
{¶ 32} Steiner, the treating emergency room physician, also testified that "[t]here had to be a traumatic event to cause the injury[;]" the infant's injuries were not possible without one. He explained that a fall of two feet was not a sufficient height to cause life-threatening injuries in an infant. Steiner stated that the deceased infant suffered from a bruised scalp, fractured skull, and three different types of bleeding over the surface of the brain. He further testified that the injuries were very recent, as there were signs of fresh trauma, and were not inflicted days before. Steiner noted that there were bruises on each side of the mouth and in a pattern that would indicate the "baby's mouth was pinched in an effort, either to force feed the baby, or to hush the baby." Additionally, Steiner stated that there was evidence of some irritation and inflammation of the infant's esophagus which indicated heartburn. Steiner explained that heartburn is painful to an infant and will cause a baby to cry and become fussy. Lastly, Steiner stated that the infant could have been saved had he received medical attention immediately.
{¶ 33} Sergeant Terrence Hudnall ("Hudnall") testified regarding the interview of Defendant. Hudnall stated that initially, Defendant maintained that nothing had happened and the infant slept all afternoon. Hudnall indicated that later Defendant changed his account of the events and declared that while lying on the bed, he had placed the infant on his chest and had fallen asleep. Defendant asserted that the infant had somehow rolled over and fell onto the floor. Hudnall testified that after additional questioning, Defendant confessed to elbowing the baby twice in the head because he would not stop crying. Hudnall recalled Defendant explaining that the baby "whimpered a few times, * * * then closed his eyes and went to sleep. At that point he laid [the infant] down on the bed. [Defendant] got up. He went downstairs and he laid on the couch." Hudnall testified that Defendant allegedly checked on the baby prior to leaving the house and that the baby did not appear to be in any distress.
{¶ 34} Lastly, Defendant testified at trial and offered conflicting testimony. Defendant asserted that "[he] never once told anyone that [he] bowed [his] head down and [he] struck anyone. [He] would never hit [the infant.]" He further asserted that he did not murder the infant and would never hurt him. Defendant expressed his love for the child. He verified that he had exclusive control of the infant on the afternoon of his death and recited his version of the events. Defendant stated that the infant fell from his chest while the two were sleeping on the bed. He further explained that he would have called 911 if he knew that something was wrong.
{¶ 35} As the jury had the opportunity to view the witness' testimony and adjudge their credibility, we are to give deference to the jurors' judgments. Smith at ¶ 16, citing State v. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13. Upon careful review of the record and testimony presented at trial, we hold that the jury did not convict Defendant of murder, felonious assault, and child endangering contrary to the manifest weight of the evidence. Subsequently, we find that the State produced sufficient evidence to support these convictions. Accordingly, Defendant's third, fourth and fifth assignments of error are overruled.
 ASSIGNMENT OF ERROR I {¶ 36} "The [t]rial [c]ourt [e]rred in sentencing * * * [Defendant] to consecutive terms of incarceration and improperly followed the procedure in imposing the sentence pursuant to the felony sentencing guidelines set forth in [R.C.] 2929."
{¶ 37} In his first assignment of error, Defendant argues that the trial court erred when it sentenced him to serve consecutive sentences on the charges of murder, felonious assault and child endangering. Specifically, Defendant argues that the trial court did not comply with R.C. 2929.14(C) and (E) and R.C. 2929.19(B). He also maintains that the record does not support the trial court's findings. We disagree.
{¶ 38} R.C. 2929.14(E)(4) provides for consecutive sentences if "the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following: (a) [t]he offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * *, or was under post-release control for a prior offense[;] (b) [t]he harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct[;] (c) [t]he offender's history of criminal conduct demonstrates that the consecutive sentences are necessary to protect the public from future crime by the offender."
{¶ 39} Additionally, R.C. 2929.19(B)(2)(c) requires the trial court to state its reasons for imposing consecutive sentences under R.C.2929.14. If a trial court fails to make the required findings, the appellate court "shall remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings." R.C. 2953.08(G)(1).
{¶ 40} This Court has held that these findings need not be in the sentencing transcript if they are articulated in the journal entry. Statev. Riggs (Oct. 11, 2000), 9th Dist. No. 19846, at 4. See, also, State v.Edmonson (1999), 86 Ohio St.3d 324, 327. Therefore, we may review both the hearing transcript and the journal entry when determining if the trial court complied with the statutory requirements. State v. Nixon
(Apr. 25, 2001), 9th Dist. Nos. 00CA007638 and 00CA007624, at 30.
{¶ 41} The sentencing hearing transcript reveals that the court found "that consecutive sentences are necessary as punishment in this matter and are not disproportionate to the offenses." Thus, the trial court satisfied the first requirement under R.C. 2929.14(E)(4). The court also stated that "there was a separate animus in respect to the child endangering, and I would specifically state that after the assault on the child, there was a conscious disregard for five hours for that child's welfare and the lost opportunity for medical intervention that might * * * have saved his life." The court further found that "to sentence otherwise would be to diminish what has happened here and the value that we, as a society, place on our children." These remarks reflect the additional findings, required by R.C. 2929.14(E)(4), that must be made when imposing consecutive sentences. These statements by the court demonstrate its concern that the harm caused by the offenses was so great that no single prison term "adequately reflects the seriousness of the offender's conduct." See R.C. 2929.14(E)(4)(b).
{¶ 42} Additionally, the court made the requisite findings regarding the imposition of consecutive sentences in its journal entry. The court indicated that "pursuant to [R.C.] 2929.14(E)(3), that consecutive sentences are necessary to protect the public and punish the offender, not disproportionate to the conduct and to the danger the offender poses, and the harm was so great or unusual that [a] single term does not adequately reflect the seriousness of the conduct."
{¶ 43} Thus, the court followed the statutory mandate when it sentenced Defendant to consecutive sentences. Defendant's first assignment of error is therefore overruled.
 ASSIGNMENT OF ERROR II {¶ 44} "The [t]rial [c]ourt erred in sentencing * * * [Defendant] to the maximum sentence for the crime of child endangering by improperly following the procedures for such a sentence as stated in [R.C.] 2929.14 and 2929.19."
{¶ 45} In his second assignment of error, Defendant argues that the trial court erred in sentencing him to a maximum prison sentence for endangering children. Specifically, Defendant avers that his sentence is inconsistent with R.C. 2929.14 and R.C. 2929.19. Defendant's contentions lack merit.
{¶ 46} An appellate court may remand a matter to the trial court for resentencing if it finds that the trial court clearly and convincingly acted contrary to law. R.C. 2953.08(G)(2)(b). Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." State v. Eppinger (2001), 91 Ohio St.3d 158, 164, quotingCross v. Ledford (1954), 161 Ohio St. 469, 477.
{¶ 47} The overriding purpose of felony sentencing is to punish the offender and to protect the public from future criminal acts. R.C.2929.11. R.C. 2929.12 provides that the trial court shall consider certain factors relating to the seriousness of the offender's conduct and others relating to the likelihood of the offender's recidivism. The Ohio Supreme Court has held that R.C. 2929.12 does not require specific language or specific findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors. State v. Arnett (2000), 88 Ohio St.3d 208, 215. See State v.Neptune, 9th Dist. No. 3171-M, 2001-Ohio-1768, at 4.
{¶ 48} A trial court may impose the maximum prison term upon an offender if he falls into one of four categories: (1) those offenders committing the worst forms of the offense; (2) those posing the greatest likelihood of committing future crimes; (3) certain major drug offenders as provided in R.C. 2929.14(D)(3); and (4) certain repeat violent offenders as provided in R.C. 2929.14(D)(2). R.C. 2929.14(C).
{¶ 49} When imposing a maximum sentence, "the trial court must make a finding with respect to one of the four categories and specify its reasons for imposing the maximum sentence." State v. Newman, 9th Dist. No. 20981, 2002-Ohio-4250, at ¶ 8, citing R.C. 2929.19(B)(2)(d). See, also, Edmonson, 86 Ohio St.3d at 329. This Court has held that the trial court's findings may be in either the transcript of the sentencing hearing or present in the journal entry. State v. Pacely, 9th Dist. No. 01CA007784, 2002-Ohio-951, at 3, citing Riggs, supra, at 3-4.
{¶ 50} In this case, Defendant appeals the maximum sentence he received for the child endangering conviction. Upon a review of the record, we find that the trial court articulated its findings underlying its imposition of the maximum sentence. When sentencing Defendant to the maximum sentence for child endangering, the trial court stated that "[t]his [c]ourt finds that there was a separate animus in respect to the child endangering, and I would specifically state that after the assault on the child, there was a conscious disregard for five hours for that child's welfare and the lost opportunity for medical intervention that might * * * have saved his life. * * * [A]nything other than the maximum sentence would be inconsistent with all of the sentencing guidelines[.]"
{¶ 51} In addressing the imposition of maximum prison terms, the journal entry provides: "[t]he [c]ourt has considered the record, oral statements, as well as the principles and purposes of sentencing under [R.C.] 2929.11, and the seriousness and recidivism factors under [R.C.]2929.12." The court further found "pursuant to [R.C.] 2929.12(B): (1) relationship with victim facilitated offense; (2) prior incarceration; (3) not amenable to community control; (4) recidivism likely; (5) justice requires a prison term; [and] * * * Defendant is not amenable to community control[.]"
{¶ 52} After a thorough review of the record, we find that the trial court made all the requisite findings in order to impose the maximum sentence. Notwithstanding the fact that the trial court did not specifically state its findings in regards to R.C. 2929.14(C), we conclude the reasons stated at the sentencing hearing, combined with the findings made in the journal entry, are sufficient to satisfy the statutory requirements to impose the maximum sentence. "[T]here must be a finding on the record that the offender posed the greatest likelihood of recidivism or committed the worst form of the offense. We do not require the court to utter any `magic' or `talismanic' words, but it must be clear from the record that the court made the required findings." Statev. Duvall, 8th Dist. No. 80316, 2002-Ohio-4574, at ¶ 35, quotingState v. White (1999), 135 Ohio App.3d 481, 486. See Arnett,88 Ohio St.3d at 215 (stating that specific language or specific findings on the record are not required in order to show that the trial court considered the applicable factors).
{¶ 53} Consequently, we cannot say that the record contains clear and convincing evidence that the trial court acted contrary to the law. Accordingly, Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR VIII {¶ 54} "The trial court erred to the prejudice of * * * [Defendant] when it denied [Defendant's] motion to allow the jury to consider the lesser included offense of manslaughter."
{¶ 55} In his eighth assignment of error, Defendant maintains that he was prejudiced when the trial court denied his motion for a jury instruction on voluntary manslaughter and the lesser included offense of involuntary manslaughter. Defendant's assignment of error lacks merit.
{¶ 56} "Whether a jury instruction is necessary * * * is a question of law which we review de novo if the trial court's decision is not based upon its sound discretion to determine whether the evidence presented at trial is sufficient to require that the instruction be given." State v. Cherry, 9th Dist. No. 20771, 2002-Ohio-3738, at ¶ 69, citing State v. Lessin (1993), 67 Ohio St.3d 487, 494. The trial court's determination will not be disturbed on appeal absent an abuse of discretion. State v. Wolons (1989), 44 Ohio St.3d 64, 68. Abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
 Voluntary Manslaughter
{¶ 57} Defendant asserts that voluntary manslaughter is a lesser included offense of murder as defined in R.C. 2903.02(B). The Ohio Supreme Court has held otherwise; "[v]oluntary manslaughter is an inferior degree of murder * * * [it] is not a lesser included offense of murder[.]" State v. Shane (1992), 63 Ohio St.3d 630, 632, citing Statev. Tyler (1990), 50 Ohio St.3d 24, 36. However, the Court further stated that the test for whether a judge is required to give a jury instruction on voluntary manslaughter, when a defendant is charged with murder, is the same test that is applied when a jury instruction on a lesser included offense is sought. Shane, 63 Ohio St.3d at 632, citing Tyler,50 Ohio St.3d at 37.
{¶ 58} Therefore, as a defendant is entitled to a jury instruction on a lesser included offense when the evidence presented at trial reasonably supports both an acquittal of the crime charged and a conviction of the lesser included offense, he would likewise be entitled to an instruction on voluntary manslaughter when the evidence presented at trial reasonably supports the same. Shane, 63 Ohio St.3d at 632. SeeCherry at ¶ 81. However, some evidence is not enough; sufficient evidence must be presented that would allow a jury to reasonably reject the greater offense and find the defendant guilty of the inferior-degree offense. Shane, 63 Ohio St.3d at 632-33; Cherry at ¶ 81. When making this determination, the evidence must be viewed in a light most favorable to the defendant. State v. Smith (2000), 89 Ohio St.3d 323, 331, citingState v. Wilkins (1980), 64 Ohio St.2d 382, 388.
{¶ 59} R.C. 2903.03 defines voluntary manslaughter as knowingly causing the death of another "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force[.]" An objective standard is applied when determining whether provocation is reasonably sufficient to incite sudden passion or fits of rage. Shane, 63 Ohio St.3d at 634. "The provocation must be reasonably sufficient to incite the defendant to use deadly force. * * * [I]t must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." (Emphasis sic.) Id. at 635. Then, if the objective standard is satisfied, a subjective inquiry is made as to whether the actor was in fact under the influence of sudden passion or in a fit of rage. Id. at 634. "If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction." Id. at 634.
{¶ 60} Certain situations have been regarded as cases in which voluntary manslaughter instructions are appropriate: assault and battery, mutual combat, illegal arrest, and discovering a spouse in the act of adultery. Id. at 635. This case involves one who was allegedly provoked to act, and under the influence of sudden passion or in a sudden fit of rage, because of an infant's cries. We cannot find such alleged provocation as reasonably sufficient to warrant a voluntary manslaughter instruction. Accordingly, Defendant's eighth assignment of error, as it pertains to a voluntary manslaughter jury instruction, is overruled.
 Involuntary Manslaughter
{¶ 61} Defendant maintains that he was entitled to a jury instruction of the lesser included offense of involuntary manslaughter. We disagree.
{¶ 62} "Even though involuntary manslaughter is a lesser included offense of murder, a criminal defendant is only entitled to such an instruction when the evidence warrants it." State v. Brown, 9th Dist. No. 20662, 2002-Ohio-148, at 9, citing State v. Kidder (1987),32 Ohio St.3d 279, 280. See, also, State v. Thomas (1988),40 Ohio St.3d 213, 215 (stating that involuntary manslaughter is a lesser included offense of murder). As stated above, a defendant is entitled to a jury instruction on a lesser included offense when the evidence presented at trial reasonably supports both an acquittal of the crime charged and a conviction of the lesser included offense. Shane,63 Ohio St.3d at 632; Thomas, 40 Ohio St.3d at 216. Sufficient evidence is needed, and it is to be viewed in a light most favorable to the defendant. Shane, 63 Ohio St.3d at 632-33; Smith, 89 Ohio St.3d at 331, citing Wilkins, 64 Ohio St.2d at 388.
{¶ 63} Involuntary manslaughter is defined as "caus[ing] the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A). Defendant was convicted of murder in violation of R.C. 2903.02(B): "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of * * * [R.C.] 2903.04."
{¶ 64} The predicate offenses of Defendant's murder conviction are felonious assault and child endangering, which are both offenses of violence. R.C 2901.01(A)(9). Therefore, as the evidence at trial will be presented to establish either felonious assault or child endangering, murder as defined by R.C. 2903.02(B) would be the correct charge and not involuntary manslaughter. The evidence presented would not have allowed a jury to reasonably reject murder, under R.C. 2903.02(B), with the predicate offenses of violence and to convict Defendant of involuntary manslaughter with those same predicate offenses of violence. For all the foregoing reasons, Defendant's eighth assignment of error, as it relates to the involuntary manslaughter instruction, is overruled.
 ASSIGNMENT OF ERROR IX {¶ 65} "[Defendant] was denied effective assistance of counsel in violation of the [S]ixth [A]mendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution."
{¶ 66} In his ninth assignment of error, Defendant contends that he was denied the effective assistance of counsel. Defendant asserts that his counsel was ineffective because counsel did not offer "expert medical testimony or any other evidence to refute the State's contention that * * * [Defendant] was the perpetrator of the injuries." We disagree.
{¶ 67} In order to establish the existence of ineffective assistance of counsel, the defendant must satisfy a two-pronged test: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674.
{¶ 68} Defendant bears the burden of proof on this matter. Colon
at ¶ 49, citing State v. Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, there exists a strong presumption of the adequacy of counsel's performance, and that counsel's actions were sound trial tactics. Colon at ¶ 49, citing Smith, 17 Ohio St.3d at 100. "A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound strategy." State v.Watson (July 30, 1997), 9th Dist. No. 18215, at 4. Additionally, debatable trial tactics do not give rise to a claim for ineffective assistance of counsel. In Re: Simon (June 13, 2001), 9th Dist. No. 00CA0072, at 4, citing State v. Clayton (1980), 62 Ohio St.2d 45, 49. A defendant should put forth a showing of a substantial violation of an essential duty. Watson, supra, at 6, citing State v. Nabozny (1978),54 Ohio St.2d 195, paragraph four of the syllabus.
{¶ 69} Prejudice entails a reasonable probability that, but for counsel's errors, the result of the trial would have been different.State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. The court is also to consider "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Colon at ¶ 49, quoting Strickland,466 U.S. at 690. An appellate court may analyze the second prong of theStrickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice. See State v. Loza (1994),71 Ohio St.3d 61, 83.
{¶ 70} In this case, Defendant avers that he was denied effective assistance of counsel when his attorney failed to present expert medical testimony and expound on an alternative theory pertaining to the infant's death. After careful review of the record, we find Defendant's arguments are without merit.
{¶ 71} We note that nowhere in the record is there a showing that the alleged errors would have affected the verdict. Defendant's brief states that he "might have been acquitted if counsel handled this matter differently." (Emphasis added.) Defendant did not demonstrate that there was a "reasonable probability that, were it not for counsel's errors * * * the result of the trial would have been different." State v.Shirley, 9th Dist. No. 20569, 2002-Ohio-31, at 14, citing Bradley,
42 Ohio St.3d at paragraph three of the syllabus.
{¶ 72} Specifically, Defendant failed to show that the inclusion of expert medical testimony would have caused the jury to reach a different verdict. Defendant did not provide the substance of the testimony which he believed would assist his case. Nor did he show a substantial violation of an essential duty on the part of defense counsel. The calling of witnesses is a trial tactic, and as stated earlier, absent a showing of a substantial violation of an essential duty, debatable trial tactics of defense counsel generally are not sufficient to give rise to a claim for ineffective assistance of counsel. State v. Coleman (Nov. 4, 1992), 9th Dist. No. 15612, at 4-5. Furthermore, counsel functioned effectively at the hearing inasmuch as he actively participated by cross-examining the State's witnesses. See Statev. Paxton, 9th Dist. No. 01CA007818, 2002-Ohio-221, at 13 (finding effective assistance of counsel where defense attorney thoroughly cross-examined State's witnesses and defendant failed to show prejudice). Therefore, as Defendant failed to satisfy the Strickland
test, his ineffective assistance of counsel claim must fail. Colon at ¶ 48, citing Strickland, 466 U.S. at 687.
{¶ 73} Accordingly, Defendant's ninth assignment of error has no merit and is overruled.
{¶ 74} Defendant's assignments of error are overruled. The convictions of the Summit County Court of Common Pleas are affirmed.
CARR, J. CONCURS IN JUDGMENT ONLY.